ORIGINAL

FILED
06 JUL 20 AM 11:52

SUSAN F. LA MARCA (Cal. Bar No. 215231)
lamarcas@sec.gov
PATRICK T. MURPHY (Admitted in New York)
murphyp@sec.gov
ROBERT S. LEACH (Cal. Bar No. 196191)
leachr@sec.gov
SUSAN FLEISCHMANN (Cal. Bar No. 207194)
fleischmanns@sec.gov

Attorneys for Plaintiff
SECURITIES AND EXCHANGE COMMISSION
44 Montgomery Street, Suite 2600
San Francisco, California 94104
Telephone: (415) 705-2500
Facsimile: (415) 705-2501

#1 8m

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

E-filing

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>Plaintiff,<br><br>vs.<br><br>GREGORY L. REYES, ANTONIO CANOVA, and STEPHANIE JENSEN,<br><br>Defendants. | [redacted]<br><br>COMPLAINT<br><br>PVT<br><br>C 06 4435 |

Plaintiff Securities and Exchange Commission (the "Commission") alleges:

**SUMMARY OF THE ACTION**

1. From at least 2000 through 2004, executives of Brocade Communications Systems, Inc. ("Brocade" or "the Company"), a San Jose computer networking company, concealed millions of dollars in expenses from investors, and significantly overstated the Company's income, by falsifying records relating to employee stock option grants. The fraudulent scheme was orchestrated by former chief executive officer Gregory L. Reyes, who routinely executed backdated documents and evaded rules requiring Brocade to publicly report these compensation expenses.

2. Under well-settled accounting principles in effect throughout the relevant period, Brocade did not need to record an expense for options granted to employees at the current market price ("at-the-money"), while the Company was required to record an expense in its financial statements for any options granted below the current market price ("in-the-money"). In order to provide Brocade employees and executives with far more lucrative "in-the-money" options, while avoiding having to inform shareholders of the millions of dollars in compensation expenses, Reyes engaged in a scheme to grant "in-the-money" options by falsifying company records to create the false appearance that the options had been granted at the market price on an earlier date.

3. By falsifying the dates on which options were purportedly granted, Reyes and others materially understated Brocade's expenses and overstated its income, and falsely represented in certain filings that Brocade had incurred no expense for options grants.

4. Reyes enlisted other persons in the scheme, including Stephanie Jensen, Brocade's former Vice President of Human Resources, who put in place a system for routinely backdating options grants to employees and falsifying other documentation to avoid detection of the scheme by the Company's auditors and other persons. Also, when Brocade's former chief financial officer, Antonio Canova, learned of facts suggesting the backdating scheme, Canova facilitated the fraudulent reporting of material misrepresentations about the Company's earnings and expenses and the material misrepresentations in Brocade's filings about its employee stock option program.

5. By engaging in the acts alleged in this Complaint, the defendants, among other things, violated the antifraud provisions of the federal securities laws, falsified books and records, and caused Brocade to falsely report its financial results. The Commission seeks an order enjoining defendants from future violations of the securities laws, requiring them to disgorge ill-gotten gains with prejudgment interest, and to pay civil monetary penalties, barring Reyes and Canova from serving as officers or directors of a public company, and providing other appropriate relief.

## JURISDICTION AND VENUE

6. This Court has jurisdiction over this action pursuant to Sections 20(b) and 22(a) of the Securities Act of 1933 ("Securities Act"), 15 U.S.C. §§ 77t(b) and 77v(a), and Sections 21(d), 21(e) and 27 of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. §§ 78u(d), 78u(e)

and 78aa. The defendants, directly or indirectly, have made use of the means and instrumentalities of interstate commerce, of the mails, or of the facilities of a national securities exchange in connection with the acts, practices and courses of business alleged in this complaint.

7. This district is an appropriate venue for this action under Section 22 of the Securities Act, 15 U.S.C. § 77v, and Section 27 of the Exchange Act, 15 U.S.C. § 78aa. The transactions, acts, practices, and courses of business constituting the violations alleged herein occurred within the Northern District of California, and the defendants may be found in this district.

**INTRADISTRICT ASSIGNMENT**

8. Assignment to the San Jose Division is appropriate pursuant to Civil Local Rule 3-2(e) because a substantial part of the events that give rise to the Commission's claims occurred in Santa Clara County.

**DEFENDANTS**

9. Defendant Gregory L. Reyes, 43, is a resident of Saratoga, California. Reyes joined Brocade as its president and chief executive officer ("CEO") in May 1998, and became a member of its board of directors in July 1998. In May 2001, Reyes took on the additional role of chairman of Brocade's board of directors. On approximately January 24, 2005, Reyes was succeeded as CEO and chairman of the board by another executive, while Reyes continued as a director and an advisor until he left the Company in July 2005. From 2001 through the present, Reyes has also served on the boards of directors of other publicly traded technology companies.

10. Defendant Antonio Canova, 44, is a resident of Los Altos Hills, California. Canova joined Brocade in December 2000 and served as Brocade's chief financial officer ("CFO") and vice president of finance, from May 2001 until he resigned from the Company in December 2005. Canova is licensed as a certified public accountant in California.

11. Defendant Stephanie Jensen, 48, is a resident of Los Altos, California. Jensen served as Brocade's vice president of human resources from October 1999 until February 2004. She worked as a consultant to Brocade from February 2004 until August 2004, when she retired from Brocade.

## RELEVANT ENTITY

12. Brocade Communications Systems, Inc. is a Delaware corporation based in San Jose, California, that develops and sells storage networking products. Since May 1999 when it completed its initial public offering of stock, Brocade's securities have been traded on the Nasdaq National Market, and the Company has had common stock registered with the Commission under Section 12(g) of the Exchange Act. At all times relevant to this action, Brocade used a fiscal year ending on the last Saturday in October.

## FACTUAL ALLEGATIONS

### A. Reyes Caused Brocade to Misrepresent the Company's Employee Stock Option Program

13. Brocade became a public company in May 1999 and quickly experienced substantial growth in revenues and in the size of its operation. Between October 1999 and October 2002 Brocade increased the size of its workforce by more than six-fold, hiring over 1,150 employees. Reyes was extremely concerned with recruiting employees in what he considered to be a competitive market and informed Brocade's board of directors that he considered attracting and retaining top talent to be one of the most important aspects of his job as CEO.

14. To recruit and retain key employees, Brocade made liberal use of employee stock options as a form of compensation. The stock options gave employees the right to buy Brocade's stock at a set price, called the exercise price or "strike" price. The value of the options to the employees increased to the extent the market price of Brocade's stock exceeded the strike price of the options.

15. Under the accounting rules in effect from the time Brocade became a public company in 1999, through 2004, U.S. public companies were permitted to grant stock options to employees without recording an expense so long as the options' strike price was at or above the market's closing price for the stock on the day the options were granted. However, for any options granted "in-the-money" – that is, with a strike price below the market price when granted – public companies were required to record a compensation expense in their financial statements. Consequently, granting in-the-money options to employees could have a significant impact on the expenses and income (or loss)

reported to the shareholders of a public company. The accounting rules also specified that a company must recognize compensation expense if it granted options to a non-employee.

16. As a public company, Brocade filed with the Commission annual reports that included audited financial statements, certified by the Company's outside auditors. Brocade's public filings affirmatively stated that the Company accounted for its stock options granted to employees in accordance with generally accepted accounting principles, also known as GAAP, which are the accounting conventions, standards, and rules required for preparing financial statements. GAAP required an expense to be recorded for stock options granted at prices below the market value for the stock on the date of the grant. Brocade made the statements about accounting for stock options in accordance with GAAP in the notes to its audited financial statements, included in its annual reports to shareholders, filed with the Commission on Form 10-K, for its fiscal years 2000, 2001, 2002 and 2003. Also, Brocade's annual report filed on Form 10-K for fiscal year 2003 represented that, following this rule, the Company did not record any expense for stock options because the strike price for the options granted always equaled the trading price on the date of grants. Reyes reviewed and signed each of the above Forms 10-K that made this false representation, and also certified the Forms 10-K for fiscal years 2002 and 2003. Canova similarly reviewed and signed the Forms 10-K for fiscal years 2001, 2002 and 2003 making this false representation, and certified those for fiscal years 2002 and 2003.

17. The same claim, that Brocade accounted for its stock options granted to employees in accordance with GAAP, and that no compensation expense was recorded, was also stated in the notes to the unaudited financial statements included with each of its quarterly reports filed on Form 10-Q for the quarters ended April 26, 2003, July 26, 2003, January 24, 2004, May 1, 2004, and July 31, 2004. Reyes signed a certification stating, among other things, that he had reviewed the Forms 10-Q for these periods and he was not aware of any material misstatements of fact or omissions in those filings. Canova also signed and certified each of the Forms 10-Q for these periods.

18. The representations to Brocade's shareholders in its annual and quarterly filings about the Company's stock option program were untrue. Reyes knew those statements were untrue, because he engineered a scheme to falsify the documentation for options grants to employees to make

it appear as though Brocade was not required to record an expense for its options. In particular, to evade the consequences of granting options to employees "in-the-money," Reyes signed falsely dated options grants to make it appear as though the options had been granted at the market price on an earlier date.

19. As more fully described below, Reyes enlisted other employees, including Jensen, in his scheme to falsify the documentation of Brocade's options grants. Reyes also counted on the complicity of other persons, including Canova, who learned of the scheme but nevertheless permitted false statements to the public and to the Company's shareholders in Brocade's filings to be made.

**B. Reyes' Scheme to Backdate Option Grants**

20. After Brocade became a public company, Brocade's board of directors had in place stock option plans, including a plan under which Reyes was given the authority to grant stock options to employees (other than certain officers and directors), as the sole member of a "Compensation Committee" that acted as the "Administrator" of the plan.

21. During the period beginning no later than 2000 through 2004, Reyes used the authority delegated to him to choose when to grant options to non-officer employees, as well as how many options to grant. During this period, Reyes used the virtually unchecked authority given to him to grant "in-the-money" options to employees by falsifying in the options documentation the date on which the grants were made and thereby granting the options with below-market strike prices.

22. To carry out the options grant scheme, Reyes directed Jensen to prepare documentation of the options grants to employees for his signature. In particular, Jensen provided Reyes with a list (by name of employee, number of options, hire date for new hires, and other information) of options granted at a purported "Compensation Committee Meeting" occurring on a given date. Reyes signed the documentation for each such grant, attesting that he, as the sole member of the Compensation Committee meeting on that date, had granted the options to the specified persons on that date.

23. Jensen and others also supplied Reyes with Brocade's stock price history over a period of time in which she, or others, highlighted the lowest closing price during the period, which was at times as long as three months. The documentation supplied by Jensen purported to specify the

date on which the Compensation Committee meeting occurred; in reality the date specified was simply the date selected from Brocade's stock price history because it was the lowest (or nearly) in the period.

24. In fact, as Reyes and Jensen both knew, Reyes had not granted the options on the date set forth in the options grant. Instead, at a later date when the market price was higher, Reyes and Jensen backdated the grant documentation to an earlier date, using hindsight, to make it appear that the options had been granted on the earlier date.

25. Reyes and Jensen then provided the minutes of the purported Compensation Committee meeting that documented the options grant to other persons at Brocade who were responsible for recording the grant in Brocade's books and records and preparing the Company's financial statements. As Reyes and Jensen further knew, because they supplied documentation that falsely represented the options were granted on an earlier date and that the exercise price for the grants was the earlier market value, the Company did not record an expense related to the grants in its financial statements.

26. On at least nine occasions between January 2, 2001 and July 2, 2002, Reyes backdated options grants to provide employees with "in-the-money" options while evading the requirement that Brocade incur a compensation expense related to those grants. Those grants were backdated as of the following dates: January 2, 2001, April 17, 2001, July 23, 2001, October 1, 2001, October 30, 2001, November 28, 2001, January 22, 2002, February 28, 2002, and July 2, 2002.

27. Indeed, during the 10 consecutive fiscal quarters beginning with Brocade's third quarter ended July 31, 2000, through the fourth quarter ended October 26, 2002, Brocade granted stock options to employees at the quarterly low stock price in 8 of the 10 quarters, and with exercise prices near the quarterly low in the other two quarters. See Appendix A.

28. Reyes' scheme to backdate stock options continued during 2003 and 2004. Beginning in mid-August 2003, Reyes granted options to employees on a more frequent basis than he had previously. As a result, Jensen and others began providing Reyes with information showing Brocade's stock price history, and its low closing stock price, over a period of approximately a week.

29. On at least six occasions between August 15, 2003 and October 20, 2004, Reyes backdated options grants to provide employees with "in-the-money" options while evading the requirement that Brocade incur a compensation expense related to those grants. Those grants were backdated as of the following dates: August 15, 2003, October 20, 2003, January 22, 2004, February 26, 2004, March 22, 2004, and June 21, 2004.

30. Indeed, during Brocade's five consecutive fiscal quarters beginning with the quarter ended October 26, 2003, through the quarter ended October 30, 2004, Reyes made 32 option grants. Of those grants, 19 grants to over 1,000 employees (granting options to purchase a total of approximately 16 million shares), were priced at the weekly low closing price for Brocade's stock and for an additional three grants, within just $0.03 of the weekly low. <u>See</u> Appendix A.

**C. Reyes' Backdating Scheme Caused Brocade to Falsely Report Financial Results**

31. The options backdating scheme caused Brocade to materially misstate its financial results during the period beginning no later than 2000 through 2004. Reyes knew the applicable accounting rules. He spoke frequently, within the Company, with persons outside of Brocade, and publicly, about the rules requiring public companies to record an expense for "in-the-money" options grants. Reyes sought to evade the requirement by falsifying the dates, aware that the Company relied on the falsified options documentation to prepare its financial statements.

32. Jensen also understood that accounting rules required that Brocade record an expense for options granted to employees that were "in-the-money," as she had been instructed or advised regarding the rules by persons at the Company and by Brocade's outside auditors and consultants. She falsified the options documentation, and related records, aware that the Company relied on the falsified options documentation to prepare its financial statements.

33. Thus, during the period from 2000 through 2004, using the Compensation Committee Meeting minutes supplied to them by Jensen or persons working at her direction, persons working in Brocade's finance department recorded the information into Brocade's books and records immediately upon receiving the Compensation Committee Meeting minutes. From those books and records, the persons in the finance department incorporated the grants into Brocade's financial statements.

34. The finance department personnel also checked the grant documentation against other information supplied by Jensen or persons working at her direction. In particular, for newly hired employees, the options grants were compared against documentation of the employees' start dates as evidenced in offer letters. However, since Jensen and persons working at her direction had also falsified those documents, the backdating went undetected and Brocade failed to record any compensation expense related to the backdated options grants.

35. Brocade also provided the same documentation about grant dates and employee hiring to the Company's external auditors in connection with their annual audits of Brocade's financial statements. Relying on the false documentation supplied to them, Brocade's auditors concurred with the Company's assessment that no compensation expense should be recorded for the options granted to employees.

36. Based on the false and misleading information recorded in its books and records, Brocade filed and publicly announced materially false and misleading financial results for its fiscal years 2000, 2001, 2002, 2003, and publicly announced materially false and misleading financial results for fiscal year 2004. Late in 2004, the Audit Committee of Brocade's board of directors began to investigate allegations by a former employee who claimed to have been issued back-dated options.

37. During the course of the Audit Committee's investigation, Brocade announced on January 24, 2005 (and later filed in its January 31, 2005 Form 10-K) restated financial results previously announced for 1999 through 2004, to record expenses for options grants to employees. The restated results had the following impact: (1) net loss for the 2004 fiscal year increased from $1.3 million to $32 million (i.e., net loss was understated by 95.9%); (2) net loss for fiscal year 2003 increased from $136 million to $146 million; (3) net income for fiscal year 2002 increased from $60 million to $126 million; and (4) income for fiscal years 1999 through 2001 declined by a total of $303 million.

38. On May 16, 2005, the Company announced a further restatement (filed on amended Form 10-K dated November 22, 2005) to include additional stock-based compensation expense of $0.9 million related to options grants between August 2003 and November 2004.

**D. Canova Enabled the Backdating Scheme to Continue Undetected**

39. At the time he joined Brocade in late 2000, Canova, a CPA, was well-versed in the accounting rules that applied to the accounting for stock options, including the requirement that a public company record an expense for "in-the-money" options granted to employees. While with Brocade, Canova had occasion to discuss these rules and their effects on the Company with the Company's external auditors and with persons at Brocade, including Reyes.

40. Beginning no later than April 2001, shortly before being elevated to the position of CFO, Canova learned facts calling into question the integrity of Brocade's financial statements based on its options grants. In April 2001, Canova received an email from Jensen in which a Brocade manager had stated that Brocade's option price was "usually the lowest closing price" experienced between meetings when options were granted. Canova instructed Jensen that she should caution the manager "not to make statements about the board granting shares at the lowest price."

41. Also in 2001, Canova and Brocade's controller discussed the controller's concerns about the delay between purported options grant dates and the dates when the finance department employees received documentation of the grants. Although the delay was the result of, and suggested the existence of, the options backdating scheme, other than speaking with Reyes Canova did nothing to investigate.

42. In early 2002, Canova learned of further facts suggesting that options grants that included two executives, Richard Geruson and Daniel Cudgma, had been backdated and that Jensen had also used false dates on letters offering employment to them. Then, in October 2002, Canova again received an email describing the process for granting options to Geruson as "forging option paperwork and offer letters so he could get better priced options." Although Canova was repeatedly confronted with information about falsified books and records and the backdating scheme, Canova did not investigate or review the impact of backdated or falsified options grants on Brocade's financial statements, nor inform the Audit Committee of what he had learned.

43. Instead, after learning of these facts, Canova helped facilitate the fraud by directing finance department employees to ensure that the dates used for option grants in the Compensation Committee meeting minutes were consistent with employee records reflecting their hiring dates.

Where the two types of records were inconsistent, Canova instructed employees to ensure that the Compensation Committee meeting minute dates corresponded to the hire dates of the employees listed in the minutes, which thus concealed date discrepancies from Brocade's external auditors.

44. Canova knew, or was reckless in not knowing, that the documentation of options grants used to prepare the Company's financial statements was not reliable, that Brocade was granting options to employees for which the Company should have recorded a compensation expense but did not, and that the backdating scheme rendered Brocade's financial statements and its disclosures to shareholders materially false and misleading.

**E. Reyes Was Motivated by Personal Gain and Competitive Advantages to Backdate Options**

***Reyes Himself Received Backdated Options***

45. Reyes knew that he, and other officers of the Company, similarly received options backdated as of the same dates as the backdated employee options. He was thus motivated to continue the scheme, in part, to enrich himself and his fellow officers.

46. Reyes, as the chairman of Brocade's board of directors, was highly influential and able to recommend that the board act to compensate officers, including Reyes, through options grants. Thus, in a June 2003 resolution, a committee of the board of directors accepted a recommendation that Reyes, as the CEO, be granted a total of 1.1 million options divided into two grants during two fiscal quarters. Relying only on the resolution, Reyes included himself in two options grants that were otherwise made to employees of Brocade. Although nothing in the committee's resolution specified the dates of the grants to Reyes or the strike prices, Reyes granted himself 600,000 options as of August 15, 2003 and 500,000 options as of December 10, 2003. Only after the grants were made and recorded in Brocade's books and records did the committee of Brocade's board approve the grants.

47. Also, on at least two occasions, Reyes received large options grants which were dated as of the same dates on which he had granted other employees backdated options. Those grants to Reyes were backdated as of April 17, 2001 and October 1, 2001. The April 17, 2001 grant also included a grant to another officer of Brocade, based on Reyes' recommendation.

***Reyes Backdated Options Grants to Dates Predating Key Employees' Start Dates***

48. Reyes used the options backdating scheme to attract key employees to join the Company. In certain instances, his scheme resulted in options grants to persons as of dates that predated the employees' hiring by Brocade.

49. For example, Reyes purported to grant approximately 2 million options to over 260 employees on October 30, 2001, but he did not actually approve this option grant until January 2002, when Brocade's stock price was significantly higher. In January 2002, Reyes and Jensen backdated the grant to October 30, 2001, preparing false Compensation Committee minutes to create the appearance that the options had been granted on the earlier date.

50. Among the persons included in the options grant dated October 30, 2001 were two individuals, Dean Traut and Richard Geruson, who were not then employed by Brocade but whom Reyes interviewed personally for positions with Brocade in December 2001 and January 2002, respectively. Reyes signed minutes which falsely asserted that Geruson and Traut were hired on October 30, 2001. Jensen also knew that neither Geruson nor Traut was employed by Brocade on October 30, 2001, as she instructed her subordinates to create offer letters for both executives backdated to October 30, 2001.

***Reyes Changed Grants to Ensure Value for Employees While Hiding Expense***

51. Reyes also used his unfettered control over the employee stock options program to change previously issued options grants when Brocade's stock price fell, so that employees would receive in-the-money options but Brocade would not record the necessary expense.

52. Thus, on February 1, 2002 (in Brocade's second fiscal quarter of 2002), Reyes interviewed Daniel Cudgma, who was not then employed by Brocade. Later that day Reyes informed Jensen that Cudgma would be hired and directed that Cudgma be included in an options grant, which Jensen was then preparing, that was backdated to November 28, 2001 (a date in Brocade's first fiscal quarter of 2002) when Brocade's stock price was approximately $8 per share lower than the February 1, 2002 closing price. Jensen prepared the Compensation Committee meeting minutes, signed by Reyes, granting an option to Cudgma to purchase 285,000 shares (and to other persons for lesser share amounts), backdated to November 28, 2001. The minutes also falsely asserted that Cudgma

was hired on November 28, 2001. Jensen also signed a backdated letter offering Cudgma the position at Brocade and bearing a false start date of November 28, 2001.

53. When, after February 1, 2002, Brocade's stock price declined, Reyes reacted by directing Jensen to change the option grant to Cudgma several times in March and April 2002 – again, selecting a date from the past when the stock price was trading at a lower price. In approximately mid-April 2002, in an effort to retain Cudgma, Reyes signed Compensation Committee meeting minutes increasing Cudgma's option grant to 500,000 shares, backdated as of February 28, 2002 (a date on which Brocade's stock closed at approximately $4 per share below the then-current market price). At approximately the same time, Jensen directed persons in the Human Resources department to prepare a new offer letter for Cudgma, this time backdated to January 28, 2002.

54. Reyes knew, or was reckless in not knowing, that the backdated option grants he authorized and signed were false and misleading and rendered Brocade's public statements about how it accounted for employee stock options materially false and misleading and further rendered Brocade's financial statements materially false and misleading.

55. Jensen also knew, or was reckless in not knowing, that the backdated options documentation and backdated employee offer letters she helped prepare or sign were false and misleading, and that they rendered Brocade's financials statements false and misleading. Jensen also knowingly provided substantial assistance to Reyes' and Brocade's scheme to falsely report the Company's options expenses.

**F. Reyes and Canova Falsely Certified Brocade's Financials, Misrepresenting Their Accuracy**

56. Reyes signed Brocade's annual reports filed on Forms 10-K for fiscal years 2000, 2001, 2002, and 2003. Canova also signed Brocade's annual reports filed on Forms 10-K for the fiscal years 2001, 2002 and 2003, and he signed each of the 11 quarterly reports filed on Form 10-Q for the fiscal quarter ended April 28, 2001 through the fiscal quarter ended July 31, 2004. Each of these annual and quarterly reports materially misrepresented Brocade's stock-based compensation expense and net income and loss, and made materially false and misleading disclosures and omitted material information about Brocade's stock option practices.

57. Reyes also signed false certifications of Brocade's 2002 and 2003 annual reports filed on Form 10-K and of the quarterly reports filed on Forms 10-Q for the quarters ended July 27, 2002 through July 31, 2004, which stated that the report "fairly presents in all material respects the financial condition and results of operations of Brocade Communications Systems, Inc.," although he had ample information that the certifications were not true.

58. Canova also signed false certifications of Brocade's 2002 and 2003 annual reports filed on Form 10-K and of the quarterly reports filed on Forms 10-Q for the quarters ended July 27, 2002 through July 31, 2004, which stated that the report "fairly presents in all material respects the financial condition and results of operations of Brocade Communications Systems, Inc.," although he had ample information that the certifications were not true. In addition, Canova signed certifications of Brocade's Forms 10-Q filed for the quarters ended January 25, 2003 through the quarter ended January 29, 2005, attesting that he had disclosed all instances of fraud, whether or not material, involving management or others with responsibility over internal controls to the Company's Audit Committee and auditors, although he had not.

59. In connection with the Company's outside auditors' annual audits of Brocade's financial statements, Reyes further asserted in management representation letters dated November 16, 2000, November 20, 2001, November 18, 2002, and November 14, 2003, that Brocade's financial statements were prepared consistently with generally accepted accounting principles. Specifically, Reyes falsely represented in the letters that management had provided to the auditors all financial records and related data, that there were no instances of fraud involving management or material transactions that had not been properly recorded or significant deficiencies in the design and operation of internal controls, and that stock-related awards to employees had been accounted for in accordance with applicable GAAP accounting rules.

60. Reyes also falsely represented in letters to Brocade's outside auditors provided in connection with their quarterly reviews of the Company's financial statements that the financial statements were fairly presented in accordance with GAAP, that management had made available all financial records and related data, and that there were no instances of fraud involving management or material transactions that had not been properly recorded. Those letters are identified in Appendix B.

61. Also in connection with Brocade's outside auditors' annual audits of the Company's financial statements, Canova too asserted in management representation letters dated November 20, 2001, November 18, 2002, November 14, 2003, and January 27, 2005, that Brocade's financial statements were prepared consistently with generally accepted accounting principles, that management had provided to the auditors all financial records and related data, that there were no instances of fraud involving management or material transactions that had not been properly recorded or significant deficiencies in the design and operation of internal controls, and that stock-related awards to employees had been accounted for in accordance with applicable GAAP accounting rules.

62. Canova also falsely represented in letters to Brocade's outside auditors provided in connection with their quarterly reviews of the Company's financial statements that the financial statements were fairly presented in accordance with GAAP, that management had made available all financial records and related data, and that there were no instances of fraud involving management or material transactions that had not been properly recorded. Those letters are identified in Appendix B.

63. Reyes' scheme also rendered materially false and misleading statements in Brocade's proxy statement filed on February 25, 2002 and incorporated into Brocade's 2002 Form 10-K, which asserted that Brocade's options were granted in such a way as to align the long-term interests of employees and shareholders.

**G. The Defendants Were Unjustly Enriched**

64. During the period from 2000 through 2004, each of the defendants was unjustly enriched through their fraudulent conduct at Brocade. Among other things, each of the defendants received bonuses or stock options, and exercised stock options, and sold shares of Brocade.

## FIRST CLAIM FOR RELIEF

*Violations of Section 17(a) of the Securities Act by All Defendants*

65. The Commission realleges and incorporates by reference Paragraphs 1 through 64, above.

66. By engaging in the conduct described above, Reyes, Canova, and Jensen, directly or indirectly, in the offer or sale of securities, by the use of the means or instruments of transportation or communication in interstate commerce or by use of the mails:

(a) with scienter, employed devices, schemes or artifices to defraud;

(b) obtained money or property by means of untrue statements of a material fact or omissions to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; and

(c) engaged in transactions, practices, or courses of business which operated or would operate as a fraud or deceit upon purchasers of securities.

67. By reason of the foregoing, Reyes, Canova, and Jensen have violated, and unless restrained and enjoined will continue to violate, Section 17(a) of the Securities Act, 15 U.S.C. § 77q(a).

## SECOND CLAIM FOR RELIEF

*Violations of Section 10(b) of the Exchange Act and Rule 10b-5 Thereunder by All Defendants*

68. The Commission realleges and incorporates by reference Paragraphs 1 through 64, above.

69. By engaging in the conduct described above, Reyes, Canova, and Jensen, with scienter, directly or indirectly, in connection with the purchase or sale of securities, by the use of means or instrumentalities of interstate commerce or of the mails, or of facilities of a national securities exchange:

(a) employed devices, schemes, or artifices to defraud;

(b) made untrue statements of a material fact or omitted to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; and

(c) engaged in acts, practices, or courses of business which operated or would operate as a fraud or deceit upon other persons, including purchasers and sellers of securities.

70. By reason of the foregoing, Reyes, Canova, and Jensen have violated, and unless restrained and enjoined will continue to violate, Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5, 17 C.F.R. § 240.10b-5.

71. Jensen also knowingly provided substantial assistance to other persons' violations of Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5, 17 C.F.R. § 240.10b-5.

72. By reason of the foregoing, Jensen has aided and abetted other persons' violations, and unless restrained and enjoined will continue to aid and abet such violations, of Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5, 17 C.F.R. § 240.10b-5.

## **THIRD CLAIM FOR RELIEF**

*Violations of Section 13(b)(5) of the Exchange Act and Rule 13b2-1 Thereunder by All Defendants*

73. The Commission realleges and incorporates by reference Paragraphs 1 through 64, above.

74. By engaging in the conduct described above, Reyes, Canova, and Jensen knowingly falsified books, records, or accounts of Brocade, or knowingly circumvented or failed to implement a system of internal accounting controls.

75. By engaging in the conduct described above, Reyes, Canova, and Jensen, directly or indirectly, falsified or caused to be falsified, books, records, or accounts subject to 15 U.S.C. § 78m(b)(2)(A).

76. By reason of the foregoing, Reyes, Canova, and Jensen have violated, and unless restrained and enjoined will continue to violate, Section 13(b)(5) of the Exchange Act, 15 U.S.C. § 78m(b)(5), and Rule 13b2-1, 17 C.F.R. § 240.13b2-1.

## **FOURTH CLAIM FOR RELIEF**

*Violations of Exchange Act Rule 13b2-2 by All Defendants*

77. The Commission realleges and incorporates by reference Paragraphs 1 through 64, above.

78. Reyes and Canova, each as officers (or a director) of an issuer, by engaging in the conduct described above, directly or indirectly, in connection with (a) an audit, review, or examination of the financial statements of the issuer required to be made pursuant to Commission rules, or (b) the preparation or filing of any document or report required to be filed with the Commission pursuant to Commission rules: (1) made or caused to be made a materially false or misleading statement to an accountant, or (2) omitted to state, or caused another person to omit to

state, a material fact necessary in order to make the statements made, in light of the circumstances under which such statements were made, not misleading to an accountant.

79. Reyes and Canova, each as officers (or a director) of an issuer, by engaging in the conduct described above, directly or indirectly took actions to mislead or fraudulently influence independent public or certified public accountants engaged in the performance of an audit or review of the financial statements of Brocade, while they each knew or should have known that their actions, if successful, could result in rendering Brocade's financial statements materially misleading.

80. By reason of the foregoing, Reyes and Canova have violated, and unless restrained and enjoined will continue to violate, Exchange Act Rule 13b2-2, 17 C.F.R. § 240.13b2-2.

81. Jensen knowingly provided substantial assistance to Reyes' and Canova's violations of Exchange Act Rule 13b2-2, 17 C.F.R. § 240.13b2-2.

82. By reason of the foregoing, Jensen aided and abetted Reyes' and Canova's violations, and unless restrained and enjoined will continue to aid and abet such violations of, or to violate, Exchange Act Rule 13b2-2, 17 C.F.R. § 240.13b2-2.

## FIFTH CLAIM FOR RELIEF

*Aiding and Abetting Violations of Section 13(a) of the Exchange Act and Rules 12b-20, 13a-1, and 13a-13 Thereunder by All Defendants*

83. The Commission realleges and incorporates by reference Paragraphs 1 through 64, above.

84. Based on the conduct alleged above, Brocade violated Section 13(a) of the Exchange Act, 15 U.S.C. § 78m(a), and Rules 12b-20, 13a-1, and 13a-13, 17 C.F.R. §§ 240.12b-20, 240.13a-1, and 240.13a-13, which obligate issuers of securities registered pursuant to the Exchange Act to file with the Commission annual and quarterly reports that, among other things, do not contain untrue statements of material fact or omit to state material information necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading.

85. By engaging in the conduct described above, Reyes, Canova, and Jensen knowingly provided substantial assistance to Brocade's filing of materially false and misleading reports and filings with the Commission.

86. By reason of the foregoing, Reyes, Canova, and Jensen have aided and abetted Brocade's violations, and unless restrained and enjoined will continue to aid and abet such violations, of Section 13(a) of the Exchange Act, 15 U.S.C. § 78m(a), and Rules 12b-20, 13a-1, and 13a-13, 17 C.F.R. §§ 240.12b-20, 240.13a-1, and 240.13a-13.

**SIXTH CLAIM FOR RELIEF**

*Violations of Rule 13a-14 under the Exchange Act by Reyes and Canova*

87. The Commission realleges and incorporates by reference Paragraphs 1 through 64, above.

88. Reyes and Canova signed, as Brocade's principal executive officer and principal financial officer, respectively, false certifications pursuant to Rule 13a-14 of the Exchange Act that were included in Brocade's 2002 and 2003 annual reports filed on Forms 10-K, as well as its quarterly reports filed on Forms 10-Q for the quarters ended July 27, 2002 through July 31, 2004. In each such certification, Reyes and Canova falsely stated, among other things, that: (a) each report did not contain any untrue statement of a material fact or omit to state a material fact necessary to make the statements made, in light of the circumstances under which such statements were made, not misleading; (b) each financial statement, and other financial information included in each report, fairly presented in all material respects the financial condition, results of operations, and cash flows of Brocade as of, and for, the period presented in the report; and (c) Reyes and Canova had disclosed to Brocade's auditors all significant deficiencies in the design or operation of Brocade's internal controls and any fraud, whether or not material, that involved management or other employees who had a significant role in Brocade's internal controls.

89. By reason of the foregoing, Reyes and Canova have violated, and unless restrained and enjoined will continue to violate, Exchange Act Rule 13a-14, 17 C.F.R. § 240.13a-14.

**SEVENTH CLAIM FOR RELIEF**

*Aiding and Abetting Violations of Section 13(b)(2)(A) of the Exchange Act by All Defendants*

90. The Commission realleges and incorporates by reference Paragraphs 1 through 64, above.

91. Based on the conduct alleged above, Brocade violated Section 13(b)(2)(A) of the Exchange Act, 15 U.S.C. § 78m(b)(2)(A), which obligates issuers of securities registered pursuant to Section 12 of the Exchange Act, 15 U.S.C. § 78*l*, to make and keep books, records, and accounts, which, in reasonable detail, accurately and fairly reflect the transactions and dispositions of the assets of the issuer.

92. By engaging in the conduct described above, Reyes, Canova, and Jensen knowingly provided substantial assistance to Brocade's failure to make and keep books, records, and accounts, which, in reasonable detail, accurately and fairly reflected the transactions and dispositions of the assets of Brocade.

93. By reason of the foregoing, Reyes, Canova, and Jensen have aided and abetted Brocade's violations, and unless restrained and enjoined will continue to aid and abet such violations, of Section 13(b)(2)(A) of the Exchange Act, 15 U.S.C. § 78m(b)(2)(A).

**EIGHTH CLAIM FOR RELIEF**

*Aiding and Abetting Violations of Section 13(b)(2)(B) of the Exchange Act by All Defendants*

94. The Commission realleges and incorporates by reference Paragraphs 1 through 64, above.

95. Based on the conduct alleged above, Brocade violated Section 13(b)(2)(B) of the Exchange Act, 15 U.S.C. § 78m(b)(2)(B), which obligates issuers of securities registered pursuant to Section 12 of the Exchange Act, 15 U.S.C. § 78*l*, to devise and maintain a sufficient system of internal accounting controls.

96. By engaging in the conduct described above, Reyes, Canova, and Jensen knowingly provided substantial assistance to Brocade's failure to devise and maintain a sufficient system of internal accounting controls.

97. By reason of the foregoing, Reyes, Canova, and Jensen have aided and abetted Brocade's violations, and unless restrained and enjoined will continue to aid and abet such violations, of Section 13(b)(2)(B) of the Exchange Act, 15 U.S.C. § 78m(b)(2)(B).

**PRAYER FOR RELIEF**

WHEREFORE, the Commission respectfully requests that this Court:

I.

Issue an order permanently restraining and enjoining all Defendants and their agents, servants, employees, attorneys, and assigns, and those persons in active concert or participation with them, from violating Section 17(a) of the Securities Act, 15 U.S.C. § 77q(a), and Sections 10(b) and 13(b)(5) of the Exchange Act, 15 U.S.C. §§ 78j(b) and 78m(b)(5), and Rules 10b-5, 13a-14, 13b2-1, and 13b2-2, 17 C.F.R. §§ 240.10b-5, 240.13a-14, 240.13b2-1, and 240.13b2-2, and from aiding and abetting violations of Sections 13(a), 13(b)(2)(A), and 13(b)(2)(B) of the Exchange Act, 15 U.S.C. §§ 78m(a), 78m(b)(2)(A), and 78m(b)(2)(B), and Rules 12b-20, 13a-1, and 13a-13, 17 C.F.R. §§ 240.12b-20, 240.13a-1, and 240.13a-13.

II.

Issue an order directing Defendants to disgorge all wrongfully obtained benefits, plus prejudgment interest.

III.

Issue an order directing Defendants to pay civil monetary penalties under Section 20(d) of the Securities Act, 15 U.S.C. §§ 77t(d), and Section 21(d)(3) of the Exchange Act, 15 U.S.C. §§ 78u(d)(3).

IV.

Issue an order barring Defendants Reyes and Canova from serving as officers and directors of any public company, pursuant to Section 21(d)(2) of the Exchange Act, 15 U.S.C. § 78u(d)(2).

V.

Retain jurisdiction of this action in accordance with the principles of equity and the Federal Rules of Civil Procedure in order to implement and carry out the terms of all orders and decrees that may be entered, or to entertain any suitable application or motion for additional relief within the jurisdiction of this Court.

VI.

Grant such other and further relief as this Court may determine to be just and necessary.

Dated: July 20, 2006

Respectfully submitted,

Susan Fleischmann
Attorney for Plaintiff
SECURITIES AND EXCHANGE COMMISSION