IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>    Plaintiff,<br><br>  v.<br><br>GREGORY L. REYES, et al.,<br><br>    Defendants.                              / | No. C 06-04435 CRB<br><br>**ORDER** |

The Securities and Exchange Commission ("SEC") brought this enforcement action against Gregory Reyes, Antonio Canova, and Stephanie Jensen (collectively, "Defendants") following an investigation into an alleged backdating scheme at Brocade Communications Systems, Inc. ("Brocade"). Defendants then sought to depose certain witnesses whom the SEC interviewed during the course of its investigation. Many, if not all, of these witnesses, however, either have refused, or are likely going to refuse, to answer Defendants' questions by invoking the Fifth Amendment and asserting their privilege against self-incrimination.

Now pending before the Court is Defendants' motion "to compel deposition testimony, for an evidentiary hearing, and for other appropriate remedies." Defendants argue that these witnesses, whom they label the "Silent Eleven," have no genuine fear of prosecution and that the witnesses' invocation of the Fifth Amendment is facetious. Defendants further assert that the SEC and the Department of Justice ("DOJ") have been "playing games" by granting use immunity to these witnesses in order to obtain information

about the case, and thereafter withholding immunity in order to deprive Defendants of the same information. Through this motion, Defendants seek an order compelling the witnesses to testify, or in the alternative, imposing sanctions on the government for its alleged opportunistic conduct.

## DISCUSSION

To begin, the Court notes that not all of the witnesses in the so-called Silent Eleven stand in the same legal position. For instance, while most of the witnesses received grants of immunity before talking to government attorneys, some received only limited "use immunity," and others received more complete grants of "derivative use immunity." Some of the Silent Eleven at first freely provided the SEC and the DOJ with information and then, in subsequent interviews, spoke pursuant to grants of immunity. Others made no statements at all without assurances of immunity. Meanwhile, it appears that at least one witness, Heidi Rado, has never met with government attorneys and has received no grant of immunity whatsoever. Moreover, as to most of these witnesses, Defendants have not yet posed any questions. Without more specific facts regarding the witnesses' different situations and without reference to specific questions that they have refused to answer, this Court lacks adequate information to assess whether their decisions (actual or imputed) to invoke the Fifth Amendment are legitimate.

When a witness fears self-incrimination, "the proper procedure is for the deponent to attend the deposition, be sworn under oath, and respond to those questions he can answer without running a risk of self-incrimination." United States v. Hansen, 233 F.R.D. 665, 668 (S.D.Cal. 2005). Just as a witness "cannot refuse to attend a deposition under a blanket claim of Fifth Amendment privilege," id., so too is it improper for the party deposing the witness to preclude any invocation of the Fifth Amendment with a blanket claim that the privilege is unavailable. A witness's decision to invoke the privilege against self-incrimination must be evaluated on a case-by-case basis, and sometimes even on a question-by-question basis. Defendants cannot preempt the invocation of the Fifth Amendment as to an entire flock of witnesses for all purposes related to their depositions. For this reason, the motion to compel

the deposition of all of these witnesses as to all questions related to the alleged backdating scheme at Brocade is DENIED without prejudice. If and when Defendants come forward with specific witnesses who have improperly invoked the Fifth Amendment as to specific questions, the Court will reconsider any motion to compel testimony that they may file.

To deny Defendants' motion without prejudice because it does not specifically identify the circumstances under which these witnesses have invoked or will invoke the privilege, however, is merely to invite innumerable challenges in the future--a course of action that is not in the parties' best interests, or in the Court's. Therefore, more specific guidance is necessary as to the application of the privilege against self-incrimination under the circumstances of this case.

## I.  Witnesses

In general terms, "the right to assert one's privilege against self-incrimination does not depend upon the *likelihood*, but upon the *possibility* of prosecution." In re Master Key Litig., 507 F.2d 292, 293-94 (9th Cir. 1974) (emphasis added). A citizen is therefore constitutionally entitled to remain silent if he genuinely believes that his response to a question will tend to incriminate him or "furnish a link in the chain of evidence needed to prosecute [him] for a federal crime." Hoffman v. United States, 341 U.S. 479, 486 (1951). Moreover, the Supreme Court has clearly established that a witness may not be compelled to provide incriminating information, even if he has provided the same information pursuant to a grant of immunity in a previous interview. Pillsbury Co. v. Conboy, 459 U.S. 248, 263-64 (1983).

Here, all of the Silent Eleven worked at Brocade when the alleged backdating scheme was in place. Indeed, all but one of them has been identified by Defendants as having worked in the human resources department, which was responsible for administering many of the stock options granted by Brocade. These witnesses were summoned by the government and interviewed in concert by the SEC and the DOJ in connection with what those two government agencies view as corporate misconduct. Under these circumstances, it is not farfetched for the witnesses to believe that their answers would provide some link to a

chain of evidence that could be used in a criminal prosecution against them. See United States v. Rendahl, 746 F.2d 553, 556 (9th Cir. 1984) ("The fact that respondents were not the subject of any criminal investigation is not significant. The existence of a criminal investigation serves only to establish that answers are likely to be incriminating."). This Court thus accepts the view of these witnesses that their prosecution is possible, even if it may not be probable, and rejects Defendants' suggestion that their invocation of the privilege is specious or improper.

Defendants are correct to note that the Fifth Amendment protects "against real dangers, not remote or speculative possibilities," Zicarelli v. New Jersey State Comm'n of Investigation, 406 U.S. 472, 478 (1972), and that a witness may not invoke the privilege against self-incrimination if there is "no realistic threat of incrimination in a separate criminal proceeding," Minnesota v. Murphy, 465 U.S. 420, 435 n.7 (1984). But the cases to which Defendants cite are quite different from the case at bar.[1] Here, the Silent Eleven all are (or

---

[1] In Zicarelli, for example, a witness claimed that he could not be forced to testify since questions about his international exploits would have required responses permitting "prosecution or use of his testimony by a foreign sovereign." 406 U.S. at 478. The Supreme Court held that the witness's invocation of the Fifth Amendment was not well-founded because the witness "was never in real danger of being compelled to disclose information that might incriminate him under foreign law." Id. at 480. Similarly, in Murphy, the Supreme Court addressed a probationer's claim that the government had improperly dissuaded him from asserting his privilege against self-incrimination. The Court rejected the probationer's argument because the information he thought he should have withheld related only to the conditions of his probation and was thus irrelevant to any possible independent criminal prosecution. 465 U.S. at 434-39. Neither of these cases applies to the case now before this Court, in which the witnesses have been summoned by the very government attorneys who they fear will prosecute them in related and pending criminal proceedings.

Defendants' citations to other cases are similarly inapposite. For example, in United States v. Apfelbaum, 445 U.S. 115 (1980), the Supreme Court held that a witness could be prosecuted for perjury by giving false testimony, even though he had been given use immunity for that testimony, which pertained to previously committed crimes. Id. at 128. That case has little relevance here, given that no party has made any suggestion that any member of the Silent Eleven ever made false statements in their interviews with the government. Similarly, Defendants' citation to Judge Weinfeld's opinion in Camelot Group, Ltd. v. W.A. Krueger Co., 486 F. Supp. 1221 (S.D.N.Y. 1980), is unhelpful. In that case, the district court rejected the assertion of privilege by two witnesses. As to both witnesses, the Court held that the invocation of the privilege was not well-founded because the witnesses were relying on "dated and uninformative data," including "assertions of privilege in completely unrelated proceedings." Id. at 1226-27. Unlike those cases, the testimony of the Silent Eleven pertains directly to the prosecution they fear; indeed, it ostensibly formed the basis for the criminal indictments issued against the very Defendants who now wish to depose them.

4

were) employees of a company whose executives are now facing criminal and civil charges regarding the implementation of a scheme to backdate stock options at that same company. All of the Silent Eleven appear to have some connection, more or less tenuous, to the administration of this scheme. And ten of these witnesses have been summoned by the SEC and the DOJ to discuss their knowledge of, and perhaps their participation in, this same scheme. Defendants point to no case in which a court has declared that claims of privilege by witnesses under similar circumstances are not well-founded. To the contrary, the case law clearly supports the proposition that a witness's decision to invoke the Fifth Amendment in these circumstances is proper and that it would be error for a court to compel them to speak. See, e.g., Rendahl, 746 F.2d at 556-57 (holding that a witness was entitled to refuse to answer certain questions regarding his conduct and that of another defendant where such responses would have revealed his own criminal liability for failing to file tax returns, and reversing a district court's decision to compel such testimony).

      Defendants vigorously contend that the witnesses in this case cannot genuinely fear prosecution because the prosecutorial decisions in this case have already been made, because they are low-level actors in whom the government is not really interested, and because they have already been granted favors by the government for their cooperation. While these observations do suggest that the government ultimately may elect to forego prosecution, they do not remove the Silent Eleven from the specter of possible prosecution, especially when the government specifically declined to extend complete immunity to them and instead explicitly reserved the right to bring charges against them. A court cannot ride roughshod over a witness's constitutional right to invoke the Fifth Amendment based on the court's own view, or that of a litigant, as to whether the witness is "in reality" subject to prosecution. The privilege against self-incrimination does not yield to a judge's forecast, much less an adversary's, of what criminal charges a prosecutor might be inclined to bring. Where, as here, witnesses establish their connection to and knowledge of an alleged course of corporate conduct as to which the government is currently pressing criminal charges, this Court cannot find that their invocation of the Fifth Amendment is specious.

To say that the Silent Eleven *may* legitimately invoke the Fifth Amendment, however, is not to say that they may *always* invoke it legitimately, or even that the witnesses already deposed by Defendants invoked it legitimately. To the contrary, even a witness with legitimate Fifth Amendment concerns must respond to questions that do not require him to divulge incriminating information. Zicarelli, 406 U.S. at 478; Hansen, 233 F.R.D. at 668. Here, however, Defendants have elected to challenge across-the-board any assertion of privilege by the Silent Eleven, rather than to challenge particular instances in which deponents have invoked the privilege. Because the Court is unable to conclude across-the-board that these witnesses have no cause to fear prosecution, Defendants cannot prevail on their argument that the witnesses' invocations of the privilege are or not well-founded.

## II. The Government

As for the government's actions, the Court is sympathetic to Defendants' argument that SEC and DOJ attorneys have selectively used their power to grant use immunity. Whether or not the government is abusing its authority, as Defendants insist, there can be no dispute that the government's power to circumscribe the scope of a witness's immunity has allowed it to reap the benefit of testimony from the Silent Eleven, while effectively preventing Defendants from accessing the same information. Such tactically beneficial conferrals of immunity are at odds with the purpose of discovery in civil cases, which is to ensure "that litigants have the right to 'every man's evidence'" and to promote "the search for truth" by providing "wide access to relevant facts." Rivera v. NIBCO, Inc., 384 F.3d 822, 824 (9th Cir. 2004) (quoting Shoen v. Shoen, 5 F.3d 1289, 1292 (9th Cir. 1993)).

It is clear, however, that this Court may not order the government to immunize the witnesses for the purpose of letting Defendants depose them. See Pillsbury, 459 U.S. at 261 ("No court has authority to immunize a witness. That responsibility, as we have noted, is peculiarly an executive one, and only the Attorney General or a designated officer of the Department of Justice has authority to grant use immunity."); United States v. Alessio, 528 F.2d 1079, 1081 (9th Cir. 1976) ("It has repeatedly been held by this Court that the government may not be compelled to seek a grant of immunity for a prospective defense

witness."). The Ninth Circuit has established only limited exceptions to this rule, and the Court finds that these exceptions do not apply in the present circumstances. See <u>United States v. Westerdahl</u>, 945 F.2d 1083, 1086-87 (9th Cir. 1991); <u>United States v. Lord</u>, 711 F.2d 887, 892 (9th Cir. 1983); see also <u>Jeffers v. Ricketts</u>, 832 F.2d 476, 479 (9th Cir. 1987). Moreover, even if Defendants could show the specific, relevant testimony that the Silent Eleven would provide and that the government has deliberately manipulated the factfinding process--a showing that Defendants have not yet made to this Court's satisfaction--the Ninth Circuit has previously allowed courts to compel the government to grant of immunity only when necessary to vindicate the constitutional right of *criminal* defendants to a fair trial. Defendants have failed to identify a single case, and this Court is aware of none, in which a federal court has compelled the government to grant immunity in order to force a witness to give deposition testimony in a *civil* proceeding.[2]

That the Court lacks power to compel a grant of immunity, however, does not mean that the Court is without power to assist Defendants. Numerous courts have fashioned remedies, ranging from the exclusion of certain testimony to more comprehensive preclusion orders, when information is unavailable to one party because of Fifth Amendment privileges, and particularly where the machinations of one party make that information unavailable to an adversary. See generally <u>SEC v. Graystone Nash, Inc.</u>, 25 F.3d 187, 190-93 (3d Cir. 1994) (collecting cases in which "invocation of the Fifth Amendment poses substantial problems for an adverse party who is deprived of a source of information that might conceivably be determinative in a search for the truth," and noting that "the effects that an invocation of the privilege against self-incrimination will have in a civil suit depends to a large extent on the

---

[2] At oral argument, and at the behest of Defendants, this Court inquired of the government prosecutors in this case whether they intended to bring criminal charges against any of the Silent Eleven. The prosecutors declined to give an answer. The Court is of the view that the prosecutors were well within their rights so to decline. It is doubtful that this Court could compel a United States attorney to announce the government's plans to prosecute, or not to prosecute, individual wrongdoers or suspects, any more than a United States attorney could compel this Court to explain how it would be inclined to rule on a motion or a case not actually pending before it. Even if constitutional principles do not forbid such an inquiry by the judicial branch, out of deference and comity to the operation of the executive branch, this Court finds that any further inquiry would be inappropriate.

circumstances of the particular litigation"). Here, the Court would be prepared to fashion an exclusionary remedy, at an appropriate time, that would deprive the SEC of the benefit of the government's selective grants of immunity.

At this stage of the proceedings, however, the Court finds it unnecessary to take any such affirmative measures. The SEC has not yet presented evidence gleaned from the Silent Eleven in support of its charges against Defendants, and Defendants have filed no motions that would require the SEC to put such evidence to the test. Thus, aside from the inconvenience of having to wait for the information they seek, Defendants have suffered no concrete prejudice. As to *that* inconvenience, the Court finds an affirmative remedy unnecessary--having opposed the SEC's motion to stay proceedings in this civil enforcement action, Defendants now must bear some of the burden of their own choice to proceed with civil discovery at the same time that criminal charges are pending, including the danger that some relevant witnesses may invoke the Fifth Amendment. If and when the Court is called upon to evaluate evidence that was gathered by the SEC through its interviews of the Silent Eleven--whether in the context of a motion for summary judgment or at trial--the Court would be prepared to provide Defendants with a remedy suitable to their injury. For now, the Court is unwilling to advance the trial date in this matter, and so the next move rests with Defendants, who may choose either to press ahead with a motion for summary judgment (in which case the Court would consider certain measures to remedy the Silence imposed on the Eleven by the government's refusal to grant immunity) or to wait until a later date for the testimony of these eleven witnesses (in which case the Court would entertain a motion by Defendants to consider whether a remedy would be necessary to cure whatever prejudice Defendants might suffer, if any, by having to wait for the information now withheld from them).

## CONCLUSION

Defendants seek an order compelling eleven witnesses to provide deposition testimony, notwithstanding their assertion of privilege under the Fifth Amendment. The Court is unable to conclude that the deponents lack a well-founded belief that they may be

8

subject to criminal prosecution, and the Court therefore rejects Defendants' request to order these witnesses to testify. Nonetheless, because these witnesses are still required to answer any and all questions that do not require the disclosure of incriminating information, the Court holds that Defendants may revisit the issue of self-incrimination at a later date, if necessary, in the context of a more specific motion.

The Court agrees with Defendants that the government has bestowed immunity on the Silent Eleven intermittently and for the government's own advantage in this case.[3] The Court further agrees that, if these witnesses persist in their decision not to testify and if the SEC relies on any evidence obtained due to its advantageous position in these proceedings, Defendants are entitled to an appropriate remedy. Now, however, is not the time for such a remedy, since the only prejudice suffered by Defendants is delay--a consequence partly of Defendants' own decision to oppose the SEC's motion for a stay and to proceed with discovery in this case while criminal proceedings go forward. Unless and until the government employs information collected from the Silent Eleven in these civil proceedings, the Court finds that an affirmative remedy would be premature.

For the reasons set forth above, Defendants' motion "to compel deposition testimony, for an evidentiary hearing, and for other appropriate remedies," is hereby DENIED without prejudice.

**IT IS SO ORDERED.**

Dated: February 6, 2007

CHARLES R. BREYER
UNITED STATES DISTRICT JUDGE

---

[3] The Court is unimpressed with the SEC's argument that it is a hapless bystander and that all authority regarding use immunity rests with the DOJ. While this may be literally true, see 18 U.S.C. §§ 6002, 6003, a government agency working in partnership with the DOJ enjoys obvious benefits from its shared purpose with the Attorney General. Where, as here, that shared purpose provides the SEC with access to information unavailable to its civil adversaries, the Court concludes that the SEC must choose between enforcing its unique privileges and allowing the witnesses to enforce theirs.