IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>    Plaintiff,<br><br>  v.<br><br>GREGORY L. REYES, et al.,<br><br>    Defendants.                              / | No. C 06-04435 CRB<br><br>**ORDER** |

Now pending before the Court is a motion for a protective order. Through this motion, the Securities and Exchange Commission ("SEC") asks the Court to enjoin Gregory Reyes, Stephanie Jensen, and Antonio Canova (collectively, "Defendants") from using, disseminating, or disclosing a two-page document that the SEC sent to them in the course of discovery. Because the Court concludes that the work-product privilege still protects this document, the Court hereby GRANTS the SEC's motion for a protective order.

**BACKGROUND**

In August of 2006, the SEC began assembling a collection of documents that it had used in an investigation of certain stock options issued by Brocade Communications Systems, Inc. ("Brocade"). Decl. of Susan Fleischmann ¶ 2. This collection included hundreds of thousands of paper documents and millions of pages in electronic documents. Id. ¶ 3. Attorneys at the SEC reviewed these materials in an attempt to remove any privileged, protected, or confidential information. Id. ¶ 4. On August 22, 2006, the SEC

gave these documents to a private vendor for copying and scanning. Id. ¶ 5. The private vendor subsequently delivered nine DVDs containing copies of the documents to both the SEC and the Department Of Justice ("DOJ") in September of 2006. Id. ¶¶ 5-6.

The private vendor returned the boxes of documents to the SEC on October 19, 2006. Id. ¶ 19. After the materials were returned, the SEC's lead attorney conducted another review to ensure that the documents were produced accurately on the DVD. Id. ¶ 8. Shortly after the SEC's review began, Defendants Reyes and Jensen requested access to the original materials so that they, too, could ensure that no materials had been omitted in the reproduction process. Id. ¶ 7. On October 25 and 26, 2006, the SEC gave Defendants Reyes and Jensen access to the boxes to conduct their inspections, even though the SEC had not then completed its own review. Id. ¶ 9. At some point during the SEC's review of the documents, the agency discovered that a two-page document containing e-mails between SEC attorneys and other staff members had been inadvertently produced. Id. ¶ 10. The two-page document contains a somewhat terse evaluation of the alleged "ill-gotten gains" of one of Brocade's former employees, including various calculations of these purported "ill-gotten gains" according to certain variables discussed by the SEC attorneys.

On November 9, 2006, the SEC notified Defendants about the inadvertent disclosure. The SEC requested that Defendants destroy the e-mail and refrain from discussing or disclosing its contents. Defendant Canova agreed to destroy the document. Defendant Reyes refused, stating that he intends to use the e-mail in his defense. Id. ¶ 12. Defendant Jensen has not taken a position, opting to wait until the parties reach a resolution of this discovery dispute or the Court decides upon one. The SEC then filed this motion to request the Court's assistance in achieving the return or destruction of its errant e-mail.

## DISCUSSION

The government contends that the document is protected by the attorney work-product privilege. Defendant Reyes claims that the SEC has waived any applicable privilege, arguing that the agency repeatedly produced the document, failed to take adequate precautions to prevent its disclosure, and took too long to request remedial action. Defendant Reyes also

1  suggests that the e-mail is exculpatory material that would be discoverable under <u>Brady v.</u>
2  <u>Maryland</u>, 373 U.S. 83 (1963), or <u>United States v. Giglio</u>, 405 U.S. 150 (1972).

3       As to the waiver of work-product privilege, the Ninth Circuit has held that the
4  inadvertent production of privileged documents may, but need not, result in the waiver of
5  applicable privileges.  <u>Compare</u> <u>United States v. de la Jara</u>, 973 F.2d 746, 749-50 (9th Cir.
6  1992) (finding that a waiver occurred where the privilege-holder made no effort to discover
7  or remedy the inadvertent disclosure), <u>with</u> <u>Transamerica Computer Co., Inc. v. Int'l Bus.</u>
8  <u>Machs. Corp.</u>, 573 F.2d 646, 649, 651-53 (9th Cir. 1978) (finding that no waiver had
9  occurred where the privilege-holder had inadvertently produced a "small number of
10 documents" among more than 17 million pages in an "accelerated" discovery process).  The
11 Ninth Circuit has not established a precise framework for determining exactly when a waiver
12 occurs, stating only that a court must conduct an "independent analysis of the circumstances
13 surrounding [the] inadvertent production."  <u>Transamerica Computer</u>, 573 F.2d at 652.

14      In conducting such case-specific analyses, district courts within the Ninth Circuit have
15 generally weighed five factors in determining whether the privilege still applies to
16 inadvertently disclosed materials: (1) the precautions taken to prevent the disclosure; (2) the
17 time elapsed between the disclosure and the request for protection; (3) the scope of
18 production; (4) the extent of the disclosure; and (5) the fairness to each of the parties.  <u>See,</u>
19 <u>e.g.</u>, <u>Bagley v. TRW, Inc.</u>, 204 F.R.D. 170, 177 (C.D. Cal. 2001); <u>Cunningham v. Conn. Mut.</u>
20 <u>Life Ins.</u>, 845 F. Supp. 1403, 1409 (S.D. Cal. 1994); <u>In re Sause Brothers Ocean Towing</u>, 144
21 F.R.D. 111, 115 (D. Or. 1991); <u>Eureka Fin. Corp. v. Hartford Accident & Indem. Co.</u>, 136
22 F.R.D. 179, 184 (E.D. Cal. 1991); <u>Bud Antle, Inc. v. Grow-Tech Inc.</u>, 131 F.R.D. 179, 183
23 (N.D. Cal. 1990); <u>Hartford Fire Ins. Co. v. Garvey</u>, 109 F.R.D. 323, 332 (N.D. Cal. 1985).

24      Here, both sides contend that these factors weigh in their favor.  In the Court's view,
25 the SEC has the better argument.  First, the SEC reviewed the materials both prior to and
26 after their production to ensure that the disclosures did not contain confidential material.  To
27 be sure, these efforts were not foolproof.  But foolproof measures are not required; only
28 reasonable measures are.  It would not make sense to impose a standard of absolute efficacy

3

--otherwise, there would be no sense in weighing this factor at all, for *every* case of inadvertent disclosure involves some failure on the screener's part. Rather, the important question is whether the disclosing party took measures to prevent the inadvertent disclosure, and the Court finds that the SEC did so here.

Second, very little time elapsed between the SEC's inadvertent disclosure and its subsequent effort to fix the problem. In total, forty-five days passed between the date on which Reyes first received the two-page e-mail from the DOJ (September 25, 2006) and the date on which the SEC notified him of the inadvertent disclosure (November 9, 2006). Only nineteen days elapsed between the SEC's disclosure (October 20, 2006) and its attempt to fix the problem. Finally, it is worth noting that the original materials were not even in the SEC's possession during most of the time that elapsed--the private vendor was in possession of the documents for twenty-four of those days (between September 25, 2006, and October 19, 2006), and the SEC's review process was interrupted for at least some period of time when the agency permitted Defendants Reyes and Jensen to inspect the boxes.

The next two factors--the scope of the production and the extent of the disclosure--both weigh heavily in the SEC's favor. The scope of the production was enormous: millions of documents were produced, including hundreds of thousands of physical pages. Defendant Reyes correctly points out the lion's share of these documents were not generated by the SEC, and therefore could not have been subject to the work-product privilege. But this observation is irrelevant to the fact that the SEC still had to review all of these documents. Indeed, SEC attorneys compiled and looked at the contents of all of the documents simply in order to figure out what had to be produced, regardless of the privileges that may have been attached to them. Looking at the other side of the equation, the extent of the SEC's disclosure was small, indeed. In the context of ten boxes of physical documents and millions of electronic files, a two-page e-mail string is a needle in a haystack. Put into context, the SEC's disclosure was minimal.

In terms of "fairness" to the parties, the Court is of the view that neither the SEC nor Defendants has a more equitable claim here. Defendant Reyes correctly observes that the

4

SEC gave the two-page document to him and the other defendants repeatedly. But this observation is a bit misleading. All of these "three" disclosures were really one and the same production; in an age of digital technology and voluminous document production, the serial distribution of copies of documents is less convincing evidence of a privilege-holder's carelessness. Here, Defendants received the inadvertently disclosed document in different forms and from different sources--once electronically from the DOJ, once electronically from the SEC, and once during a review of the physical files at the SEC's offices. But the Court is not able to conclude from this "repeated" disclosure that the privilege was waived, much less that Defendant Reyes would be unfairly prejudiced by relinquishing it.

Also, in considering the "fairness" to the parties, it is worth noting that disclosure in this case was somewhat hurried by this Court's decision not to stay proceedings in this civil enforcement action. In Transamerica Computer, the Ninth Circuit emphasized the difficulty of producing a large number of documents in "accelerated" discovery and acknowledged that mistakes in production are likely, and perhaps inevitable, under such circumstances. Where, as here, a privilege-holder promptly discovers and responds to the inadvertent disclosure, the Ninth Circuit has emphasized that the discovery rules must be flexible enough to provide a "reasonable method of accelerating the discovery proceedings without impinging upon the parties' right to prepare their cases properly." 573 F.2d at 653.

Finally, Defendant Reyes argues that the materials are discoverable, notwithstanding the work-product privilege, because they constitute exculpatory material that the government must turn over to the defense. In support of this theory, he cites Giglio and Brady, the landmark Supreme Court cases holding that a prosecutor must divulge all relevant exculpatory material to a criminal defendant. This argument fails for two reasons. First, this is a civil enforcement action, not a criminal prosecution. Defendant Reyes has cited no authority for the proposition that he is entitled as a civil defendant to any information that he would receive under Brady or Giglio as a criminal defendant. For this reason, his citation to such authority is inapposite and unpersuasive. Second, this Court is unpersuaded that Giglio and Brady would actually apply to the two-page e-mail. These cases stand for the

5

proposition that the government must hand over all exculpatory evidence. Defendant cites no support, however, for the very different proposition that the government must hand over all communications among the government attorneys regarding exculpatory evidence. Here, Defendant Reyes wants not just the underlying information regarding the former Brocade employee's "ill-gotten gains," but the government attorneys' analysis of it. Defendant Reyes may be entitled to all exculpatory evidence, but he cites no authority for the proposition that he is entitled to have any document revealing what attorneys at the SEC or DOJ *think* about such evidence.

## CONCLUSION

For the reasons set forth above, the Court holds that the work-product privilege applies to the two-page e-mail, and that the SEC did not waive the privilege by inadvertently disclosing it. The Court further holds that Defendants may not compel the disclosure of this document in this civil case under Giglio or Brady. The SEC's motion for a protective order is therefore GRANTED.

It is further ORDERED that the all copies of the document in the possession of Defendants or their counsel shall be immediately destroyed or returned to the SEC, and that counsel for each of the defendants shall confirm to the SEC in writing, within five business days of the date of this Order, that all copies have been destroyed or returned. Each party and his or her counsel shall also immediately retrieve any copies that he or she provided to any other person and shall furnish such persons with a copy of this Order. No party shall seek to introduce the two-page document, or its contents, as evidence in this litigation, and Defendants shall not use or incorporate the document or its contents into their respective defenses in this enforcement action through the questioning of witnesses or otherwise.

**IT IS SO ORDERED.**

Dated: February 13, 2007

CHARLES R. BREYER
UNITED STATES DISTRICT JUDGE