IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>GREGORY L. REYES, et al.,<br><br>　　　　Defendants._____ / | No. C 06-04435 CRB<br><br>**MEMORANDUM AND ORDER RE: SEC'S MOTION TO COMPEL** |

　　　　In this civil enforcement action, the Securities and Exchange Commission ("SEC") alleges that three executives of Brocade Communications Systems, Inc. ("Brocade"), participated in a conspiracy to backdate stock options. One of these executives, Gregory Reyes ("Reyes"), has filed a motion for partial summary judgment. He argues that investors consider non-cash expenses such as employee stock option ("ESO") compensation "immaterial" to their investment decisions, and that any deception about the amount or nature of such expenses, at least in the circumstances presented by this case, does not constitute a "material misrepresentation" under the securities laws. See Def.'s Mot. for Partial Summ. J. on the Issue of Materiality at 19-32 (Docket No. 119) (hereinafter "Materiality Motion").

　　　　In support of the motion, Reyes submitted reports from three experts, two of whom were retained not only for the purpose of providing expert testimony, but also as litigation consultants. Reyes has disclosed all of the documents reviewed by these experts strictly in

their capacity as "witnesses." See Fed. R. Civ. P. 26(a)(2)(B) (requiring disclosure of "the data or other information considered by the witness in forming the opinions"). But he has refused to disclose documents ostensibly reviewed in their capacity as "consultants," arguing that such materials constitute privileged work product. The SEC, which disputes this claim of privilege, filed a motion to compel production of the documents withheld. As explained below, the motion is hereby GRANTED in part and DEFERRED in part.

## BACKGROUND

When experts serve as litigation consultants, the work-product privilege generally applies to materials reviewed or generated by them in that capacity. Fed. R. Civ. P. 26(b)(3); United States v. Nobles, 422 U.S. 225, 238-39 (1975); In re Cendant Corp. Sec. Litig., 343 F.3d 658, 662-65 (3d Cir. 2004). When experts serve as testifying witnesses, the discovery rules generally require the materials reviewed or generated by them to be disclosed, regardless of whether the experts actually rely on those materials as a basis for their opinions. Fed. R. Civ. P. 26(a)(2)(B); Reg. Airport Auth. of Louisville v. LFG, LLC, 460 F.3d 697, 715 (6th Cir. 2006); In re Pioneer Hi-Bred Int'l, 238 F.3d 1370, 1375 (Fed. Cir. 2001); United States v. City of Torrance, 163 F.R.D. 590, 593-94 (C.D. Cal. 1995).[1]

A question thus arises about whether, and to what extent, the work-product privilege applies when an expert alternately dons and doffs the "privileged hat" of a litigation

---

[1] Prior to 1993, courts were split on the question of whether communications between an attorney and a testifying expert were discoverable. See Intermedics, Inc. v. Ventritex, Inc., 139 F.R.D. 384, 387 n.3 (N.D. Cal. 1991) (collecting cases). In 1993, however, the discovery rules were amended to require the disclosure of "the data or other information considered by [expert witnesses] in forming [their] opinions." Fed. R. Civ. P. 26(a)(2)(B). Since the amendment, courts have overwhelmingly, though not uniformly, imposed a "bright-line rule" that all materials considered by a testifying expert, including attorney work product, must be disclosed. Regional Airport Authority of Louisville, 460 F.3d at 715; In re Pioneer Hi-Bred International, 238 F.3d at 1375; Karn v. Ingersoll-Rand, 168 F.R.D. 633, 637-41 (N.D. Ind. 1996). But see Haworth, Inc. v. Herman Miller, Inc., 162 F.R.D. 289, 292-96 (W.D. Mich. 1995). This Court concurs in the "majority view" that Rule 26(a)(2)(B) requires the disclosure of all materials considered by, presented to, or relied upon by a testifying expert in forming his or her opinions, regardless of whether they might otherwise be protected by the work-product privilege. Regional Airport Authority of Louisville, 460 F.3d at 715. Accord Fed. R. Civ. P. 26 Advisory Comm. Note to 1993 Amendments ("Given this obligation of disclosure, litigants should no longer be able to argue that materials furnished to their experts to be used in forming their opinions--whether or not ultimately relied upon by the expert--are privileged or otherwise protected from disclosure when such persons are testifying or being deposed.").

2

consultant and the "non-privileged hat" of the testifying witness. In other words, does a litigant forfeit the privilege that would otherwise attach to a litigation consultant's work when he offers that expert as a testifying witness? Every court to address this "multiple hats" problem has concluded that an expert's proponent still may assert a privilege over such materials, but only over those materials generated or considered uniquely in the expert's role as consultant. B.C.F. Oil Refining, Inc. v. Consol. Edison Co. of New York, 171 F.R.D. 57, 61-62 (S.D.N.Y. 1997); Grace A. Detwiler Trust v. Offenbecher, 124 F.R.D. 545, 546 (S.D.N.Y. 1989); Beverage Mktg. Corp. v. Ogilvy & Mather Direct Response, Inc., 563 F. Supp. 1013, 1015 (S.D.N.Y. 1983); see also Messier v. Southbury Training Sch., No. 3:94-CV-1706, 1998 WL 422858, at *1-2 (D. Conn. June 29, 1988) (unpublished opinion).

These courts have further concluded that the scope of the privilege must be narrowly construed against the expert's proponent, lest the privilege interfere with the goal of the disclosure requirements, which is to allow an adversary "to expose whatever weaknesses, unreliabilities, or biases might infect the opinions of testifying experts called by [an] adverse party." City of Torrance, 163 F.R.D. at 593. Thus, "documents having no relation to the expert's role as [a witness] need not be produced but . . . any ambiguity as to the role played by the expert when reviewing or generating documents should be resolved in favor of the party seeking discovery." B.C.F. Oil Refining, Inc., 171 F.R.D. at 62; see also Offenbacher, 124 F.R.D. at 546 (noting that documents "would become discoverable" to the extent that "the delineation between [the expert's] roles . . . become[s] blurred"); Beverage Marketing, 563 F. Supp. at 1014 (noting that the privileged and non-privileged status of "consultant" and "witness" materials can be maintained only "if this delineation [is] clearly made"). Here, this Court concludes, in accord with every other court that has considered the issue squarely, that Reyes may assert the work-product privilege, but only as to materials that do not pertain to the subject matter on which his experts have submitted testimony.[2]

---

[2] As a conceptual matter, courts addressing the "hats" problem have often failed to distinguish between two distinct ideas: the character of the documents reviewed, on the one hand, and the particular role ostensibly played by the expert when reviewing them, on the other. Compare B.C.F. Oil Refining, 171 F.R.D. at 62 (stating that "any ambiguity as to the role *played*

**United States District Court**
For the Northern District of California

## DISCUSSION

Reyes has identified the materials withheld as pertaining to "one of five discrete projects" that the two experts, Steve Stanton and David Gulley, undertook in their role as litigation consultants. See In Camera Submission Regarding Docs. Withheld on Att'y Work-Product Grounds at 4 (Docket No. 208) (hereinafter "In Camera Submission"). Reyes argues that each of these five projects has nothing to do with the experts' opinions on the materiality of stock-option expenses, but rather with "specific allegations about . . . alleged conduct and intent." Id. at 1. He argues that "the analyses and documentation relating to these projects properly may be withheld" because the summary judgment motion "is directed solely to the essential element of materiality and assumes *arguendo* the truth of the Commission's allegations regarding . . . conduct and intent." Id. at 5.

The Court disagrees. While it may be true, as Reyes contends, that his motion assumes *arguendo* the existence of some backdating, the motion does not stop at the theoretical argument non-cash stock-option expenses are *never* material to reasonable investors. Instead, it advances arguments about why the particular circumstances of the alleged backdating scheme at Brocade did not rise to the level of material misrepresentations. For instance, the motion rests in part upon the observation that Brocade disclosed certain aspects of the challenged stock option grants, id. at 4, 11-12, 22-24; that Brocade's restatement of stock-option expenses did not have a statistically significant effect on the

---

*by the expert* . . . should be resolved in favor of the party seeking discovery" (emphasis added)); with id. (stating that an expert's proponent need not produce *"documents having no relation* to the expert's role as [witness]" (emphasis added)). This Court finds that the appropriate test for disclosure is not what function the expert was ostensibly serving when he reviewed or generated the particular documents in question. Rather, the test must be whether the documents reviewed or generated by the expert could reasonably be viewed as germane to the subject matter on which the expert has offered an opinion. First, this focus on the nature of the *materials* is more consistent with Rule 26(a)(2)(B), which identifies the formation of the expert's "opinions" as the touchstone for disclosure. Second, this rule is in accord with other decisions concerning the scope of waiver regarding the work-product privilege. See United States v. Nobles, 422 U.S. 225, 239 (holding that an attorney "waived the [work-product] privilege with respect to matters covered in his [investigator's] testimony" by presenting the investigator as a witness). Third, this standard for disclosure is preferable because it emphasizes the concrete subject matter contained within the documents, rather than the artificial and illusory distinction of the "hat" worn by the expert at any particular time. Cf. United States v. Martinez, 514 F.2d 334, 343 (9th Cir. 1975) (noting, in the context of jury instructions, that it is impossible to "unring the bell" once certain thoughts or theories have been offered for consideration).

4

1 actual price of Brocade's stock, id. at 4-5, 14-16, 28-30; that the backdating of stock options
2 contributed to only a marginally to Brocade's financial restatements, id. at 6-7, 30-32; and
3 that many of the stock options allegedly backdated in this case were never actually exercised,
4 id. at 3, 32.

5  Likewise, the reports authored by Stanton and Gulley rest upon a detailed factual
6 analysis about the accounting and valuation of the stock options actually issued by Brocade.
7 See Decl. of Steven F. Stanton ¶ 6 (Docket No. 116) (hereinafter "Stanton Report")
8 (discussing the "total number of stock options awarded, canceled, and exercised in the fiscal
9 years 1999, 2000, 2001, 2002, 2003, and 2004 as disclosed in Brocade's annual filings"); id.
10 ¶ 8 (discussing the "options at issue" based upon "the total number of options issued" and
11 "the percentage of options that were exercised"); id. ¶ 11 (discussing "the amount of stock-
12 based compensation expense for the entire period affected by the restatement"); id. ¶ 17
13 (discussing how a "reading of Brocade's financial statements" would have permitted an
14 investor to "locate all of the disclosures" related to the allegedly backdated stock options);
15 see also Decl. of David A. Gulley ¶ 7 (Docket No. 121) (hereinafter "Gulley Report")
16 (concluding that "investors did not care about [Brocade's] ESO grant expenses" based on
17 "*all* evidence considered"); id. ¶ 9 (discussing "Brocade's share price history, financial
18 reporting, ESO grants and data related to Brocade and the equity markets"); id. ¶ 16
19 (indicating an awareness "that Brocade's ESO grant expenses were small in relation to other
20 expenses"); id. ¶ 16 (indicating that "Brocade also disclosed in its footnotes much larger ESO
21 grant expenses"); id. ¶ 23 ("In summary, *taken as a whole, the body of evidence I considered*
22 strongly supports my opinion that investors in Brocade and its peers did not care about ESO
23 grant expenses." (emphasis added)).

24  It is thus clear that neither the motion nor the experts' reports are confined to the
25 theoretical or hypothetical realm. Rather, they are based on a detailed consideration of the
26 proper valuation of Brocade's stock options grants, as well as judgments about the degree to
27 which allegedly backdated options actually affected Brocade's earnings restatements. It is
28 also clear that many, though perhaps not all, of the materials withheld by Reyes on grounds

5

of work-product privilege are relevant to these very same issues.[3] For this reason, Reyes is

---

[3] **[REDACTED]**

hereby ORDERED to hand over to the SEC all withheld materials, save and except for the materials that pertain *exclusively* to the "Grant-Date Probability Project" and the "Money-Left-on-the-Table Project." As to those documents, Reyes is further ORDERED to submit the documents for *in camera* inspection by Wednesday, April 4, 2007, so that the Court can determine whether these materials should be disclosed, too. Accordingly, the SEC's motion to compel is hereby GRANTED in part, and consideration of the motion is hereby DEFERRED in part, pending further review *in camera*.

**IT IS SO ORDERED.**

Dated: March 30, 2007

CHARLES R. BREYER
UNITED STATES DISTRICT JUDGE

//
//
//
//       **[REDACTED]**
//
//