QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
John M. Potter (Bar No. 165843)
johnpotter@quinnemanuel.com
Patrick Doolittle (Bar No. 203659)
patrickdoolittle@quinnemanuel.com
Christina L. Wu (Bar No. 233186)
christinawu@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, California 94111
Telephone: (415) 875-6600
Facsimile: (415) 875-6700

Attorneys for MICHAEL J. BYRD

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>Plaintiff,<br><br>vs.<br><br>MICHAEL J. BYRD,<br><br>Defendant. | CASE NO. C 06-4435-CRB<br><br>**MICHAEL J. BYRD'S NOTICE OF MOTION AND MOTION TO DISMISS THE COMPLAINT PURSUANT TO FED. R. CIV. P. 9(B) AND 12(B)(6); MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Date: November 30, 2007<br>Time: 10:00 a.m.<br>Judge: Hon. Charles R. Breyer |

**NOTICE OF MOTION AND MOTION**

TO PLAINTIFF AND ITS ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on November 30, 2007 at 10:00 a.m., or as soon thereafter as the matter may be heard, in the courtroom of the Honorable Charles R. Breyer, located at 450 Golden Gate Avenue, San Francisco, California 94102, defendant Michael J. Byrd will and hereby does move the Court to dismiss the complaint pursuant to Federal Rules of Civil Procedure 9(b) and 12(b)(6) for failure to plead its allegations of fraud against Byrd with sufficient particularity. This motion is also brought because certain claims in the complaint are time-barred.

This motion is based on this Notice of Motion and Motion; the accompanying Memorandum of Points and Authorities; the pleadings and papers on file in this action; any other matters of which this Court may take judicial notice; and such further evidence and argument as may be presented at or before the hearing on this matter.

DATED: October 5, 2007

QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

By /S/
Patrick C. Doolittle
Attorneys for MICHAEL J. BYRD

**STATEMENT OF ISSUES (Civ. L. R. 7-4(a)(3))**

1. Did the government fail to plead its allegations of fraud with sufficient particularity, as required by Rule 9(b) of the Federal Rules of Civil Procedure?

2. Does the complaint fail to state a claim?

3. Is that portion of the complaint seeking civil penalties from Byrd time-barred?

4. Is that portion of the complaint seeking an accountant's bar against Byrd time-barred?

# TABLE OF CONTENTS

**Page**


PRELIMINARY STATEMENT ....................................................................................1

FACTS ....................................................................................................................1

ARGUMENT ...........................................................................................................2

I. THE SEC'S COMPLAINT FAILS UNDER RULES 9(B) AND 12(B)(6). ........................2

A. Rule 9(b) Applies to SEC Enforcement Actions. .................................................2

B. The SEC Fails to Specifically Allege Byrd's Role, If Any, in the Fraudulent Misconduct. ..........................................................................................3

1. The SEC's Complaint Does Not Articulate the Nature of the Alleged Fraudulent Conduct by Byrd. ....................................................................3

2. The Government Fails to Specify Byrd's Alleged Wrongdoing, If Any, With Respect To The Part-Time Program. ..................................................4

3. The Government's Allegations Regarding Option Grants to Certain Individuals Fail To Meet Rule 9(b)'s Specificity Requirement. ...................5

C. The SEC Has Failed To Identify All of the Participants In The Alleged Fraud. ....................................................................................................5

D. The Government Has Failed to Sufficiently Specify The Time At Which the Allegedly Fraudulent Acts Occurred. ............................................................7

II. THE COMPLAINT CHARGES CONDUCT THAT IS BARRED BY THE RELEVANT STATUTE OF LIMITATIONS. ...........................................................8

A. The Statute of Limitations Has Run on the SEC's Ability to Obtain Civil Penalties. ...................................................................................................8

B. The SEC Cannot Obtain a Rule 102(e) Bar Because the Statute of Limitations Has Run. ...............................................................................9

C. The Tolling Agreement Does Not Save the SEC's Claims. ..................................11

## TABLE OF AUTHORITIES

**Page**

### Cases

*3M Co. v. Browner*, 17 F.3d 1453 (D.C. Cir. 1994) ....8

*Complaint, SEC v. Reyes*, Case No. 06-4435-CRB, Docket No. 1 ....2, 6

*Glen Holly Entm't, Inc., v. Tektronix, Inc.*, 100 F. Supp. 2d 1086 (C.D. Cal. 1999)....3, 5, 6

*Johnson v. SEC*, 87 F.3d 484 (D.C. Cir. 1996) ....9, 10

*Moore v. Kayport Package Express, Inc.*, 885 F.2d 531 (9th Cir. 1989)....3

*Neubronner v. Milken*, 6 F.3d 666 (9th Cir. 1993)....2, 3, 7

*In re Ruffalo*, 390 U.S. 544 (1968) ....10

*SEC v. Buntrock*, No. 02-C-2180, 2004 WL. 1179423 (N.D. Ill. May 25, 2004) ....8

*SEC v. DiBella*, 409 F. Supp. 2d 122 (D. Conn 2006) ....8, 10

*SEC v. Jones*, 476 F. Supp. 2d 374 (S.D.N.Y. 2007)....9, 10

*SEC v. McCaskey*, 56 F. Supp. 2d 323 (S.D.N.Y. 1999)....8

*SEC v. Ogle*, No. 99-C-609, 2000 WL. 45260 (N.D. Ill. Jan. 11, 2000) ....8

*SEC v. Yuen*, 221 F.R.D. 631 (C.D. Cal. 2004) ....1, 2, 3, 4, 7

*Vess v. Ciba-Geigy Corp., USA*, 317 F.3d 1097 (9th Cir. 2003)....3

*W. Mining Council v. Watt*, 643 F.2d 618 (9th Cir. 1981)....2

**Statutes**

15 U.S.C. § 78u(d) ....................8
28 U.S.C. § 2462 ....................8, 9, 10, 11
Fed. R. Civ. P. 9(b).................... passim
Fed. R. Civ. P. 12(b)(6)....................2
Rules of Practice 102(e) ....................9, 11

**Other Authorities**

Hazen, *Law of Securities Regulation*, § 16.2[2][D] (rev. Jan. 2006) ....................8

**MEMORANDUM OF POINTS AND AUTHORITIES**

**Preliminary Statement**

This government's case against Michael Byrd, Brocade's former CFO (and, later, COO and president), is based on a theory of liability that directly contradicts the theory upon which—just weeks ago—it successfully prosecuted Gregory Reyes, the former CEO of Brocade Communications Systems. In *United States v. Reyes*, the government argued that Byrd was deceived by Reyes and that the finance department was unaware of the fraudulent backdating scheme. A jury found beyond a reasonable doubt that the government's position was correct. The SEC now contradicts the position of its sister governmental branch, and asserts that Byrd was not only *not* deceived, but was "alerted to" Reyes' scheme. To harmonize its theory with the theory the government advanced to secure a criminal conviction against Reyes, the SEC necessarily relies on vague allegations. Beyond the dubiousness of the government's dueling theories, the complaint here fails because it lacks the specificity required of a complaint for fraud. Rule 9(b) of the Federal Rules of Civil Procedure required the government to plead fraud with particularity. *SEC v. Yuen*, 221 F.R.D. 631, 634 (C.D. Cal. 2004) (granting motion to dismiss and noting complaint must state "precisely the time, place, and nature of the misleading statements, misrepresentations, and specific acts of fraud").

In addition to these pleading deficiencies, the Complaint is also time-barred. While certain aspects of SEC enforcement actions are not subject to a statute of limitations, claims for civil penalties and for the imposition of an accountant's bar are subject to a five-year statute. Here, even giving the SEC the benefit of a tolling agreement Byrd signed, the SEC's claims for civil penalties and for the imposition of an accountant's bar are precluded by the statute of limitations.

**Facts**

The government's complaint alleges eight claims for relief for violations of the securities laws against defendant Michael Byrd. Cmpl. ¶¶ 37-64. During the time period at issue, Brocade's chief executive officer, Gregory Reyes, allegedly "executed" a scheme in which he "routinely backdated stock option grants to give Brocade employees and recruits valuable 'in-the-money'

stock options without disclosing the practice or recognizing the required compensation expense." *Id.* ¶ 1.

The SEC filed an enforcement action against Reyes on July 20, 2006. *See* Complaint, SEC v. Reyes, Case No. 06-4435-CRB, Docket No. 1. On that date, the SEC also brought suit against two other Brocade executives, former vice president of human resources Stephanie Jensen and former CFO Antonio Canova, for their alleged roles in the same misconduct. Ms. Jensen and Mr. Canova's involvement in the alleged misconduct is not described in the SEC's complaint against Byrd. Byrd was the company's chief financial officer from May 1999 to May 2001, and served as chief operating officer from May 2001 to January 2003, when he retired from the company. *Id.* ¶¶ 2 & 8.

**Argument**

**I. THE SEC'S COMPLAINT FAILS UNDER RULES 9(B) AND 12(B)(6).**

The Court should grant a motion to dismiss when the complaint fails "to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). Dismissal of a complaint is warranted "where there is an 'absence of sufficient facts alleged under a cognizable legal theory.'" *SEC v. Yuen*, 221 F.R.D. 631, 633 (C.D. Cal. 2004) (citation omitted). Although well-pleaded allegations are taken as true on a motion to dismiss, the Court is not required to accept unreasonable inferences, unwarranted deductions of fact, or conclusory legal allegations cast in the form of factual allegations. *See W. Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981); *Yuen*, 221 F.R.D. at 634. The averments of the government's complaint here fail because they lack the specificity required by Federal Rule of Civil Procedure 9(b) and fail to state facts sufficient to support the claims for relief the government purports to bring.

**A. Rule 9(b) Applies to SEC Enforcement Actions.**

Under Rule 9(b) of the Federal Rules of Civil Procedure, "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." FED. R. CIV. P. 9(b). The purpose of this heightened pleading requirement is "to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *Neubronner v.*

*Milken*, 6 F.3d 666, 671 (9th Cir. 1993). To fulfill this requirement, "a complaint must specify such facts as the times, dates, places, and benefits received, and other details of the alleged fraudulent activity.'" *Glen Holly Entm't, Inc., v. Tektronix, Inc.*, 100 F.Supp.2d 1086, 1094 (C.D. Cal. 1999) (*citing Neubronner*, 6 F.3d at 672); *see also Vess v. Ciba-Geigy Corp., USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (allegations "must be accompanied by 'the who, what, when, where, and how' of the misconduct charged").

This heightened pleading standard applies to cases brought by the SEC for alleged securities violations: "Rule 9(b) applies to fraud actions brought under the federal securities laws; in a securities action, a pleading will be 'sufficient under rule 9(b) if it identifies the circumstances of the alleged fraud so that the defendant can prepare an adequate answer.'" *Yuen*, 221 F.R.D. at 634 (granting motion to dismiss SEC's complaint for failure to plead fraud with particularity).

Here, the SEC has not specifically identified the fraudulent acts and circumstances as they relate to Byrd. As a result, the SEC has failed to meet the specificity requirements of Rule 9(b), and this Court should grant Byrd's motion to dismiss. *See Neubronner*, 6 F.3d at 672 ("The complaint must specify such facts as the times, dates, places, benefits received, and other details of the alleged fraudulent activity."); *Glen Holly*, 100 F.Supp.2d at 1094; *see also Moore v. Kayport Package Express, Inc.*, 885 F.2d 531, 540 (9th Cir. 1989).

**B. The SEC Fails to Specifically Allege Byrd's Role, If Any, in the Fraudulent Misconduct.**

**1. The SEC's Complaint Does Not Articulate the Nature of the Alleged Fraudulent Conduct by Byrd.**

In its complaint, the government fails to specify what role, if any, Byrd played in the alleged scheme. The government alleges that "Reyes and others" carried out the alleged scheme by falsifying grant paperwork. Cmpl. at ¶¶ 1 & 15 (alleging that "CEO Reyes and others systematically created false and misleading 'minutes' of purported 'meetings,' or similar documentation, that represented that options had been granted to employees and executives on particular dates"). The government does not, however, identify the "others," and fails to specify whether Byrd was one of the "others" who allegedly falsified grant paperwork.

The government's complaint is further ambiguous because of its allegation that "Byrd joined Brocade as CFO in May 1999, and, until late 1999, assisted Reyes in making stock option grants to employees." *Id.* ¶ 17. The government's complaint fails to assert whether, during this time period, Byrd participated in any fraudulent acts while assisting Reyes "in making stock option grants." Indeed, it is unclear whether the government asserts that any fraudulent activity occurred at all during the time period from May 1999 to late 1999, particularly given that the earliest allegedly backdated grant identified by the complaint occurred in October 1999. *See id.* ¶ 18-19. The government's allegations concerning Byrd's involvement in the alleged scheme after late 1999 are similarly ambiguous: "After 1999, Byrd was at times consulted about potential grants, but was <u>not</u> <u>routinely</u> <u>involved</u> in the preparation or review of options grants lists." *Id.* ¶ 17 (emphasis added). It is unclear whether the government asserts that Byrd, who was "consulted" but "not routinely involved" in option grants, participated in the allegedly fraudulent acts, or only received some undefined indicia that they had occurred.

Given the vagueness of these allegations, Byrd has not been given notice of the particular misconduct asserted by the SEC—namely, if he has been charged with actively participating in the allegedly fraudulent acts, or if he has only been charged with having some notice about the misconduct of Reyes (and failing to recognize it, investigate it, and correct it, according to a duty not specifically alleged). As a result, Byrd does not have information sufficient to defend against the SEC's charges. Because of this deficiency, the Court should dismiss the SEC's complaint. *See SEC v. Yuen*, 221 F.R.D. 631, 634 (C.D. Cal. 2004) (complaint must state "precisely the time, place, and nature of the misleading statements, misrepresentations, or specific acts of fraud") (citation omitted).

### 2. The Government Fails to Specify Byrd's Alleged Wrongdoing, If Any, With Respect To The Part-Time Program.

The government asserts that, in October 1999, Byrd proposed that the company "hire employees on a part time basis." Cmpl. at ¶ 20. The complaint proceeds to allege that Byrd "understood the proposed accounting interpretation regarding the definition of an 'employee,'" but it fails to allege whether Byrd's part-time-employee proposal violated that proposed accounting

interpretation. *See id.* ¶¶ 20-21. Implicitly, the complaint finds no fault with the program itself. Furthermore, although the complaint alleges that this program became "subject to abuse," it does not specify who, aside from Reyes, misused the program. The misuse of an otherwise appropriate and legal program does not lead to the conclusion that the person who devised the program somehow engaged in fraud. Indeed, if that were the case, whoever first conceived of the notion of a stock option could be accused of fraud on the ground that Gregory Reyes abused that compensation vehicle.

Furthermore, although the government asserts that Byrd became "aware of facts suggesting that Reyes and others were misusing" the program, it fails to allege with particularity what those "facts" were. *See id.* ¶ 21. Finally, the government does not specify which grants made under the part-time-employee program were improper. These pleading deficiencies run afoul of Rule 9(b).

**3. The Government's Allegations Regarding Option Grants to Certain Individuals Fail To Meet Rule 9(b)'s Specificity Requirement.**

The government also alleges that Mr. Byrd was aware of a few backdated option grants through his receipt of a smattering of emails spread out over the course of several years. Cmpl. ¶¶ 17-32. The Complaint, however, is silent on a fundamental point: the SEC does not specify—as it must under the law—whether Mr. Byrd is expected to defend his conduct with respect to these isolated transactions or whether the Commission is seeking to hold Mr. Byrd responsible for the systematic backdating activities alleged to have been committed by Mr. Reyes and the anonymous "others." The failure to define the scope of the alleged fraudulent scheme with any measure of particularity violates Rule 9(b).

**C. The SEC Has Failed To Identify All of the Participants In The Alleged Fraud.**

To meet the requirements of Rule 9(b), the SEC must identify the individuals who are responsible for the allegedly fraudulent acts. *Glen Holly Entm't, Inc. v. Tektronix, Inc.*, 100 F. Supp.2d 1086, 1094 (C.D. Cal. 1999) ("when pleading fraud, a complaint 'must adequately specify the statements it claims were false or misleading, give particulars as to the respect in which plaintiff contends the statements were made, and identify those responsible for the

statements.'") (*quoting In re GlenFed, Inc. Sec. Litig.*, 42 F.3d 1541, 1548 n.7 (9th Cir. 1994) (*en banc*)) (emphasis added).

Over one year ago, the government filed a separate complaint against Stephanie Jensen, Brocade's former Vice President of Human Resources, and Antonio Canova, Brocade's former chief financial officer. SEC v. Reyes, Case No. 06-4435-CRB, Docket No. 1. In that complaint, the government alleged that Jensen "put in place a system for routinely backdating options grants to employees and falsifying other documentation to avoid detection of the scheme by the Company's auditors and other persons," and that Canova "facilitated the fraudulent reporting of material misrepresentations about the Company's earnings and expenses and the material misrepresentations in Brocade's filings about its employee stock option program." *Id.*¶ 4.

The government's allegations against Jensen and Canova appear to touch upon the same allegedly fraudulent scheme set forth in the government's complaint against Byrd.[1] In its allegations against Byrd, however, the government fails to include a single reference to Jensen or Canova. Indeed, it has not identified any of the alleged participants in the fraudulent scheme, aside from Reyes. Rather, the SEC vaguely alleges that "Reyes and others" created false option grant paperwork. Cmpl. at ¶¶ 1 & 15. This allegation does not sufficiently "identify those responsible" for alleged misconduct. *See Glen Holly*, 100 F. Supp.2d at 1094 (quotation omitted). If the SEC intends to proceed against Byrd in connection with allegedly fraudulent actions taken by Jensen, Canova, or any other individual, Rule 9(b) requires it to specifically identify those individuals and the facts and circumstances of their allegedly fraudulent acts. *See id.* Because the SEC has not identified the individuals responsible for the alleged fraud, its complaint should be dismissed.

---

[1] Indeed, this Court has ordered the SEC's action against Byrd to be consolidated with the earlier-filed action against Reyes, Jensen, and Canova. Order Consolidating and Relating Case C-07-04223 Into C-06-04435-CRB, Docket No. 337, August 23, 2007.

**D. The Government Has Failed to Sufficiently Specify The Time At Which the Allegedly Fraudulent Acts Occurred.**

Under Rule 9(b), the government must allege the specific time at which the fraudulent acts occurred. *See Neubronner*, 6 F.3d at 672 ("The complaint must specify such facts as the times, dates, places, benefits received, and other details of the alleged fraudulent activity.") (emphasis added); *SEC v. Yuen*, 221 F.R.D. at 634 (complaint must state "precisely the time, place, and nature of the misleading statements, misrepresentations, and specific acts of fraud") (citation omitted).

Here, the government alleges that Reyes and others "systematically" created false minutes and other documentation concerning stock-option grants. Cmpl. at ¶ 15. It does not clearly allege, however, when these false documents were created. *See id*. In instances where the government does allege the time period of the allegedly fraudulent acts, its allegations are inconsistent. It asserts that Brocade falsified records relating to stock-option grants from "at least 2000 through 2004." *Id.*¶ 1. Elsewhere, though, the government alleges that, "during Byrd's tenure at Brocade," Brocade's financial statements were misstated, and that, "for example, net income for fiscal years 1999 through 2001 declined by a total of $303 million." *Id.*¶ 16. Later, it asserts that Brocade's Forms 10-K for fiscal years 2000 through 2002 and Forms 10-Q for fiscal quarters April 28, 2001 through January 25, 2003 were misstated. *Id.*¶ 33. It also asserts—in an internally inconsistent allegation—that "[b]etween 2000 and 2003, Brocade filed several registration statements. . . , including statements dated August 13, 1999, January 28, 2000, June 13, 2000, and January 15, 2001," that incorporated materially misleading statements. *Id.* ¶ 34 (emphasis added). The government identifies allegedly fraudulent grants that occurred between October 1999 and February 2002. *Id.* ¶¶ 18-32. Finally, the government asserts that Byrd was unjustly enriched by the alleged scheme from 2000 to 2001. *Id.* ¶ 36. It is unclear from these allegations when the purported fraudulent scheme began and ended, and when or even if Byrd is alleged to have been involved with or specifically aware of the fraudulent acts.

## II. THE COMPLAINT CHARGES CONDUCT THAT IS BARRED BY THE RELEVANT STATUTE OF LIMITATIONS.

### A. The Statute of Limitations Has Run on the SEC's Ability to Obtain Civil Penalties.

Through this action, the SEC seeks civil monetary penalties from Byrd. Cmpl., Prayer for Relief, § III.[2] An SEC action for civil penalties is covered by the five-year statute of limitations. 28 U.S.C. § 2462 (five year statute); *3M Co. v. Browner*, 17 F.3d 1453, 1461 (D.C. Cir. 1994) ("2462 is a general statute of limitations, applicable . . . to the entire federal government in all civil penalty cases, unless Congress specifically provides otherwise."). The SEC has acknowledged "that the five year statute of limitations embodied in 28 U.S.C. 2462 applies to the civil penalty claims." *SEC v. McCaskey*, 56 F. Supp. 2d 323, 326 (S.D.N.Y. 1999); *see also SEC v. DiBella*, 409 F. Supp. 2d 122, 127 (D. Conn 2006) (five-year statute only applies to claims seeking a "civil fine, penalty, or forfeiture."); *SEC v. Buntrock*, No. 02-C-2180, 2004 WL 1179423, at *11 (N.D. Ill. May 25, 2004).[3]

Any civil penalty the SEC could seek is measured on a transaction-by-transaction basis because, under 15 U.S.C. §78u(d), the SEC may seek a civil penalty equal to the "gross amount of pecuniary gain to such defendant *as a result of the violation*." 15 U.S.C. § 78u(d) (emphasis added); *see also Browner*, 17 F.3d at 1463. In *Browner*, the District of Columbia Circuit held that Section 2462 prevented a government agency from "assess[ing] civil penalties against [defendant] for any violations . . . allegedly committed by the company more than five years before [the agency] commenced its proceeding." *Browner*, 17 F.3d at 1463. Similarly, in *SEC v. Ogle*, No. 99-C-609, 2000 WL 45260 (N.D. Ill. Jan. 11, 2000), a district court held that as a general rule, violations of securities law that "occurred prior to . . . [the five-year period] are time-barred," making the imposition of civil penalties impossible. *Id*. at *3.

---

[2] In addition to moving to dismiss any claims seeking civil penalties, Byrd hereby moves to strike paragraph III of the prayer for relief.

[3] Civil penalties must be distinguished from disgorgement; the former is subject to Section 2462, while the latter is considered an "equitable remedy" not subject to any statute of limitations. *See* Hazen, *Law of Securities Regulation*, § 16.2[2][D] (rev. Jan. 2006).

In this case, the SEC filed its Complaint against Byrd on August 17, 2007. The last transactions mentioned in the SEC's complaint concern alleged grants to Geruson and Cudgma in early February 2002—*i.e.*, well more than five years before the SEC filed its complaint. Cmpl. ¶¶ 28-29. In fact, most of the conduct the Complaint attacks occurred in 1999 and 2000. *Id*. ¶¶ 18-25. The SEC cannot obtain civil penalties from Byrd for alleged conduct that happened so long ago.

**B. The SEC Cannot Obtain a Rule 102(e) Bar Because the Statute of Limitations Has Run.**

Under Section V of the Complaint's Prayer for Relief, the SEC seeks "such other and further relief as this Court may determine to be just and necessary."[4] In a statement to the press, the SEC indicated that one of the remedies it seeks in this action is an accountant's bar against Byrd. *See* Craig Anderson, *SEC Charges Add Twist to Brocade Case*, DAILY JOURNAL, August 20, 2007. That articled reported that "Susan LaMarca, the SEC's regional trial counsel, said the commission is seeking to bar Byrd from serving as an accountant before the commission, a punishment that would essentially make it impossible for him to work as a chief financial officer of a public company." Such a remedy is time-barred.

Because the imposition of an accounting bar in this case would be decidedly punitive in nature, and because all of the conduct alleged in the draft complaint occurred more than five years ago, a Rule 102(e) action is barred by the five-year statute of limitations set forth at 28 U.S.C. § 2462. *See* 28 U.S.C. § 2462 (imposing a five-year statute of limitations for "an action, suit, or proceeding for the enforcement of any civil fine, penalty, or forfeiture, pecuniary or otherwise"). When a penalty goes beyond rectifying the actual harm inflicted by the defendant and is not directly tied to protecting the public from a risk of future harm, courts have uniformly held that the penalty will be deemed punitive and subject to the statute of limitations period in § 2462. *See, e.g.*, *SEC v. Jones*, 476 F. Supp. 2d 374, 381 (S.D.N.Y. 2007) (quoting *Johnson v. SEC*, 87 F.3d

---

[4] In addition to moving to dismiss any claims seeking an accountant bar, Byrd hereby moves to strike paragraph V of the prayer for relief to the extent it seeks an accountant bar.

484, 488, 491 (D.C. Cir. 1996)) ("[A] remedial measure restores the wronged party to its status quo ante, correcting or undoing the effects of a particular wrong, whereas a penalty is 'a form of punishment imposed by the government for unlawful or proscribed conduct, which goes beyond remedying the damage caused to the harmed parties by the defendant's actions.'"); *SEC v. DiBella*, 409 F. Supp. 2d 122, 127 (D. Conn. 2006). The bar the SEC seeks is punitive.

Mr. Byrd's case is similar to *Johnson v. SEC*, in which the D.C. Circuit held that the suspension of a professional license was punitive in nature. As the court explained in *Johnson*, where the suspension of a license is "not directed toward correcting or undoing the effects of [the defendant's] allegedly faulty supervision," the suspension will qualify "as a 'penalty' within the meaning of § 2462." *Johnson*, 87 F.3d at 491-92. An accountant bar would not correct or undo the effects of Byrd's alleged failure to heed certain indications of the CEO's misconduct. Under these circumstances, an accountant bar serves a punitive function and is time barred under § 2462.

In this case, there is no evidence that Byrd poses a risk of harm to the public, and imposing a bar would clearly extend beyond any harm that can reasonably be tied to Byrd's conduct in this matter. The Commission cannot justify an accountant bar against Byrd based on conduct that occurred over five years ago and which was undertaken outside Byrd's capacity as an accountant.

In addition, "there is substantial evidence that Congress and the courts have long considered the suspension or revocation of a professional license as a penalty." *Johnson*, 87 F.3d at 488 n.6. *See also In re Ruffalo*, 390 U.S. 544, 550 (1968) (finding, in the due process context, that "[d]isbarment, designed to protect the public, is a punishment or penalty imposed on the lawyer"). In this case, a bar would clearly act as a personal punishment. The facts do not support a finding that it is in the public's interest to bar Byrd from practicing before the Commission as an accountant, and, when weighed against the severe reputational and professional harm that would be suffered by Byrd, a 102(e) bar cannot be considered as anything other than a penalty in this case. *See Jones*, 476 F. Supp. at 385 (holding that "the Commission has not offered facts that suggest the requested injunction is aimed at protecting the public from future harm" and when the proposed remedy was viewed "together with the severity of potential collateral consequences for Defendants," the Commission's requested relief could "only be characterized as a penalty" and

thus untimely under § 2462). Because a bar would be punitive in this case, the five-year statute of limitations of § 2462 applies.

As noted above, the latest conduct the SEC charges occurred in February 2002. Because all of the conduct at issue in the complaint occurred over five years ago, a Rule 102(e) bar is precluded by § 2462's statute of limitations.

**C. The Tolling Agreement Does Not Save the SEC's Claims.**

Byrd has signed a tolling agreement with the SEC. He agreed that the statute of limitations would be tolled during the period from June 29, 2007 to October 1, 2007. That tolling agreement is irrelevant here, however, because the five-year statute of limitations had already run on June 29, 2007. As a result, the Court should order that the SEC may not obtain civil penalties from Byrd and that it may not impose an accountant's bar against Byrd.

Dated: October 5, 2007

QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

By /S/
Patrick C. Doolittle
Attorneys for MICHAEL J. BYRD