IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SECURITIES AND EXCHANGE COMMISSION,

    Plaintiff,

v.

GREGORY L. REYES, et al.,

    Defendants.

No. C 06-04435 CRB

**ORDER DENYING MOTION TO STRIKE**

On January 4, 2008, the Court heard argument on Defendant Michael Byrd's motion to dismiss the complaint. The Court rejected Byrd's argument that the SEC complaint failed to plead fraud with particularity, and ordered supplemental briefing on whether to strike the SEC's request for civil penalties pursuant to 28 U.S.C. § 2462 as stale. Both parties agree that § 2462 is subject to a five-year statute of limitations but clash over whether the SEC has identified any conduct after June 2002 that triggers the civil penalty provision. Byrd's motion to dismiss is DENIED because there is a triable issue whether Byrd violated § 10(b) of the Securities Exchange Act, 15 U.S.C. § 78j(b), after June 2002 by failing to disclose the practice of backdating stock options in Brocade's 2002 Form 10-K, filed on January 22, 2003.

According to the SEC's complaint, Byrd's fraudulent conduct continued through his tenure at Brocade, which ended in January 2003. Specifically, the SEC alleges that Brocade's 2002 Form 10-K "materially misrepresented Brocade's stock-based compensation

expense and net income and loss, and made materially false and misleading disclosures and omitted material information about Brocade's stock option practices," and that Byrd – as Brocade's president and COO – "had continuing responsibility" for the Form 10-K's accuracy. Compl. ¶ 33.

Byrd argues that the request for civil penalties must be stricken because the SEC has not identified actionable conduct that occurred after June 2002. Byrd characterizes the complaint as merely alleging that he remained at the company through January 2003, "not that he engaged in any fraudulent or illegal conduct within the limitations period." Byrd Brief at 3. The request for penalties must be stricken, Byrd claims, because the SEC has not identified the kind of "affirmative misconduct" required to sustain a § 10(b) claim. See id. at 4 (quoting Wright v. Ernst & Young LLP, 152 F.3d 169, 175 (2d Cir. 1998) ("A defendant must actually make a false or misleading statement in order to be held liable under Section 10(b).").

Contrary to Byrd's position, the SEC has adequately pled facts that could sustain a violation of § 10(b) of the Securities Exchange Act and § 17(a) of the Securities Act. See Compl. ¶¶ 37-39 (17(a)); ¶¶ 40-42 (10(b)). Those provisions require a showing that the defendant made "(1) a material misstatement or omission (2) in connection with the offer or sale of a security (3) by means of interstate commerce. . . . Violations of Section 17(a)(1), Section 10(b) and Rule 10b-5 require scienter. . . . Violations of Sections 17(a)(2) and (3) require a showing of negligence." SEC v. Phan, 500 F.3d 895, 907-08 (9th Cir. 2007). Thus, a violation can be based on an omission of material fact, provided that there exists some duty to disclose. See Ambassador Hotel Co., Ltd. v. Wei-Chuan Investment, 189 F.3d 1017, 1025 (9th Cir. 1999).

Relying on Second Circuit precedent, Byrd assumes that the SEC is obligated to show that he – as the primary actor – made a material misstatement. But the law within the Ninth Circuit is somewhat different. In SEC v. Fehn, 97 F.3d 1276 (9th Cir. 1996), the Ninth Circuit held that a defendant may be convicted for aiding and abetting a violation of § 10(b) where the plaintiff establishes: (1) the existence of an independent primary violation; (2)

2

actual knowledge by the alleged aider and abettor of the primary violation and of his or her own role in furthering it; and (3) "substantial assistance" by the defendant in the commission of the primary violation. Id. at 1288; see also 15 U.S.C. § 78t(e) ("For purposes of any action brought by the Commission under paragraph (1) or (3) of section 78u(d) of this title, any person that knowingly provides substantial assistance to another person in violation of a provision of this chapter, or of any rule or regulation issued under this chapter, shall be deemed to be in violation of such provision to the same extent as the person to whom such assistance is provided.").

The paragraphs in § 78u(d) to which § 78t(e) refers empower the SEC to enjoin securities violations and to seek money penalties in civil actions, respectively. Thus, by its clear terms, § 78t(e) provides that aiding and abetting a violation of Chapter 2B, which encompasses 15 U.S.C. § 78a through § 78kk, is itself a violation, and as such is subject to injunctive actions and civil actions for money penalties by the SEC. See Fehn, 97 F.3d at 1283.

The Court will allow the SEC to proceed to summary judgment to produce evidence that would support the conclusion that Byrd provided substantial assistance to those who committed the primary violation by failing to disclose evidence of backdating. In Fehn, the Court held that a lawyer who edited Form 10-Qs with material misstatements and failed to properly advise his client of the misstatement substantially assisted in a violation of § 10(b). See id. at 1293-94. Byrd may similarly have been involved in overseeing Brocade's Form 10-K, and the SEC must be provided with an opportunity to flesh out its allegation that Byrd maintained responsibility for the accuracy of that report as president.

**IT IS SO ORDERED.**

Dated: February 12, 2008

CHARLES R. BREYER
UNITED STATES DISTRICT JUDGE