IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SECURITIES AND EXCHANGE COMMISSION,

    Plaintiff,

v.

GREGORY L. REYES, ET AL.,

    Defendants.

No. C 06-04435 CRB

**ORDER**

Plaintiff Securities and Exchange Commission (SEC) now moves for summary judgment against Defendant Gregory Reyes on the ground that Reyes' criminal conviction collaterally estops him from contesting liability for securities fraud violations. The SEC asks the Court to impose summary punishment on Reyes, including permanently enjoining Reyes from future violations or from serving as an officer or director, and ordering Reyes to pay civil penalties and disgorge ill-gotten gains.

The motion for summary judgment is granted in part and denied in part, as set forth below. For the reasons provided at the hearing, the Court denies the SEC's request for a remedy, without prejudice to re-submission of the motion after the termination of Reyes' appeal in criminal case #06-0556-1.

///

**United States District Court**
For the Northern District of California

## BACKGROUND

On August 7, 2007, a jury convicted Gregory Reyes, Brocade's former CEO, on ten criminal counts. Among other things, the jury concluded that Reyes willfully violated 15 U.S.C. § 78j(b) between 2000-2004 by employing manipulative and deceptive devices in connection with the purchase and sale of securities (Count Two), willfully caused Brocade to make untrue statements of material fact and omit material facts in Forms 10-K for fiscal years 2001-2003 in violation of § 78j(b) and Rule 10b-5 (Counts Five, Six, and Seven), willfully falsified books and records in violation of 15 U.S.C. § 78m (Count Eight), and made four false statements to an accountant (Counts Nine, Ten, Eleven, and Twelve).

On July 20, 2006, the SEC filed a civil complaint against Reyes, Stephanie Jensen, and ex-Brocade CFO Antonio Canova, based on the conduct that supported the Reyes conviction. Some of the SEC's claims against Reyes were predicated on the same provisions in Reyes' criminal indictment, including § 78j(b) and Rule 10b-5 (fraud), § 78m (false books and records), and 17 C.F.R. § 240.13b2-2 (false statement to accountants). The SEC also alleged that Reyes violated provisions of the securities code not included in the criminal case, including § 77q(a) (fraud in connection with the offer or sale of securities). In a separate complaint dated August 17, 2007, the SEC alleged that former Brocade CFO Michael Byrd also knowingly violated the federal securities laws.

In light of Reyes' criminal conviction, the SEC now moves for summary judgment, arguing that the jury's verdict "resolved [Reyes'] liability in this civil case for securities fraud, falsifying documents, lying to accountants and books and records violations." The SEC contends that Reyes' "unquestionable civil liability" requires that the Court grant the Commission's requested remedies: an injunction, civil penalties, disgorgement, and a bar against further service as an officer or director.

## STANDARD OF REVIEW

Summary judgment is not warranted if a material fact exists for trial. See Warren v. City of Carlsbad, 58 F.3d 439, 441 (9th Cir. 1995). The underlying facts are viewed in the light most favorable to the party opposing the motion. See Matsushita Elec. Indus. Co. v.

2

Zenith Radio Corp., 475 U.S. 574, 587 (1986). "Summary judgment will not lie if . . . the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The party moving for summary judgment has the burden to show initially the absence of a genuine issue concerning any material fact. See Adickes v. S.H. Kress & Co., 398 U.S. 144, 159 (1970). This can be done by either producing evidence negating an essential element of the plaintiff's claim, or by showing that plaintiff does not have enough evidence of an essential element to carry its ultimate burden at trial. See Nissan Fire & Marine Ins. Co. v. Fritz Companies, Inc., 210 F.3d 1099, 1103 (9th Cir. 2000).

Once the moving party has met its initial burden, the burden shifts to the nonmoving party to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. See Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986). To discharge this burden, the nonmoving party cannot rely on its pleadings, but instead must have evidence showing that there is a genuine issue for trial. See id. at 324. In considering a motion for summary judgment, however, "the court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." Anderson, 477 U.S. at 250-51.

Summary judgment is appropriate under the doctrine of collateral estoppel when all the material issues of fact in a pending action have been actually and necessarily resolved in a prior proceeding. See State of New York v. Julius Nasso Concrete Corp., 202 F.3d 82, 86 (2d Cir. 2000). "[A] criminal conviction, whether by jury verdict or guilty plea, constitutes estoppel in favor of the United States in a subsequent civil proceeding as to those matters determined by the judgment in the criminal case." United States v. Podell, 572 F.2d 31, 35 (2d Cir. 1978) (citations omitted).

**DISCUSSION**

I. The Law of Collateral Estoppel

The doctrine of collateral estoppel promotes judicial economy and protects parties from the burden of successive litigation by barring the relitigation of issues in certain

3

circumstances. See Parklane Hosiery Co. v. Shore, 439 U.S. 322, 326 (1979). The doctrine applies where the party invoking the doctrine can show that: "(1) the issue at stake is identical to an issue raised in the prior litigation; (2) the issue was actually litigated in the prior litigation; and (3) the determination of the issue in the prior litigation must have been a critical and necessary part of the judgment in the earlier action." Littlejohn v. United States, 321 F.3d 915, 923 (9th Cir. 2003). So long as all three conditions are met, a civil litigant may be estopped from relitigating an issue that was "directly determined in a previous criminal action." Bagley v. CMC Real Estate Corp., 923 F.2d 758, 762 (9th Cir. 1991) (internal quotation omitted). More specifically, a civil litigant is estopped from challenging the material facts underlying their convictions, as well as their liability for claims that mirror the criminal counts for which they were convicted. See United States v. Podell, 572 F.2d 31, 35 (2d Cir. 1978).

Where, as here, the party seeks to invoke non-mutual offensive issue preclusion, they must also establish that: (1) there was a full and fair opportunity to litigate the identical issue in the prior action; (2) the issue was actually litigated in the prior action; (3) the issue was decided in a final judgment; and (4) the party against whom issue preclusion is asserted was a party or in privity with a party to the prior action. See Syverson v. Int'l Bus. Machines Corp., 472 F.3d 1072, 1078 (9th Cir. 2007). Even where all conditions are met, the court retains "broad discretion" to determine whether it should be applied. See Parklane Hosiery, 439 U.S. at 331. Where "the application of offensive collateral estoppel would be unfair to a defendant, a trial judge should not allow the use of collateral estoppel." Id.

II. Liability

The SEC moves for summary judgment on four of its claims: for (1) securities fraud under §§ 78j(b) and 77q(a); (2) falsification of books and records; and (3) false statements to accountants. Because most of the elements necessary to establish the SEC's claims were

4

1 established at the criminal trial, Reyes does not attack the SEC's motion head-on.[1] Rather,
2 Reyes argues that: (1) the request for judgment is overbroad because it seeks judgment on
3 facts not necessarily established by the criminal conviction; and (2) new facts emerging since
4 the conviction make the application of collateral estoppel inappropriate.

5       Reyes' first objection is well-taken. The jury's verdict established that Reyes
6 committed securities fraud when he filed materially false Forms 10-K for the fiscal years
7 2001-2003. However, the SEC also seeks summary judgment on each of the quarterly
8 reports filed on Forms 10-Q for the first three quarters during fiscal years 2001 through 2004.
9 See MSJ at 6:9-22; Complaint ¶ 33. Collateral estoppel is inappropriate if there is any doubt
10 as to whether an issue was actually litigated in a prior proceeding. See Davis & Cox v.
11 Summa Corp., 751 F.2d 1507, 1518 (9th Cir. 1985). "If the decision could have been
12 rationally grounded upon an issue other than that which the defendant seeks to foreclose
13 from consideration, collateral estoppel does not preclude relitigation of the asserted issue."
14 Id. at 1518-19. Thus, the SEC bears the burden of proving that the jury's verdict as to the
15 three Forms 10-K was necessarily predicated on the conclusion that Reyes also committed
16 fraud on the Forms 10-Q. In the Court's opinion, the government has failed to do so.

17       The jury returned its verdict on a general form; accordingly, the Court cannot know
18 precisely what misrepresentations were material to the jury and cannot therefore be sure that
19 the same statements were included in the Forms 10-Q. Similarly, the jury heard no evidence
20 about Reyes' scienter when he signed the various Forms 10-Q. Under the circumstances, it
21 would be inappropriate to foreclose Reyes from disputing the illegality of the Forms 10-Q.

22       In a like fashion, the government attempts to rely on the jury's conclusion that Reyes
23 made four false statements to accountants to foreclose Reyes from challenging the illegality
24 of thirteen management representation letters. See MSJ 6:9-22. Again, the jury only
25 convicted Reyes for making four false statements, and the government does not explain how

---

[1] The SEC does seek summary judgment on one claim that the jury did not consider: in Claim One, the SEC alleges that Reyes violated § 17(a) of the Securities Act, 15 U.S.C. § 77q(a). However, "the elements necessary to establish civil liability under Section 17(a) . . . are identical to those necessary to establish criminal liability under Section 10(b)," SEC v. Haligiannis, 470 F. Supp. 2d 373, 382 (S.D.N.Y. 2007), and the jury convicted Reyes of violating Section 10(b) in Count Two.

1 their verdict also <u>necessarily</u> determined that the other statements were false.  Accordingly,
2 the SEC is entitled to summary judgment on their claim for false statements to an accountant
3 only with respect to the four statements identified in the criminal verdict.

4      As to the claims for books and records, the jury's conviction was not limited to a
5 particular book or record, and therefore the government is entitled to summary judgment on
6 that claim in its entirety.

7      Reyes' second argument is that even if the Court could properly limit summary
8 judgment to the facts necessarily found by the jury, the Court should exercise its discretion to
9 decline application of collateral estoppel because the discovery of new facts makes
10 application unfair.  In an echo of his argument for a new trial, Reyes contends that although
11 the government's criminal case was predicated on the theory that Reyes kept members of
12 Brocade's finance department in the dark about his backdating conduct, the SEC's
13 allegations support Reyes' position that members of the finance department – including
14 CFOs Byrd and Canova – were aware that backdating occurred.  According to Reyes,
15 collateral estoppel should not be applied in light of newly discovered facts because the jury
16 could have reached a different conclusion if told that finance members were aware of
17 backdating.  <u>See</u> <u>Jack Faucett Assocs., Inc. v. AT&T Co.</u>, 744 F.2d 118, 128 (D.C. Cir. 1984)
18 (holding that offensive estoppel was improvidently granted where "crucial evidence . . .
19 erroneously omitted from the prior case" "could lead a jury in a new trial to reach a different
20 result").  Recognizing that a similar argument was forwarded in his motion for a new trial,
21 Reyes notes that the standard applied to the new trial motion was more stringent than the
22 standard for denying collateral estoppel.

23      Even under the lesser standard, Reyes' argument must still be rejected for the reason
24 that regardless of whether Byrd and Canova suspected – or even knew – that Reyes was
25 backdating options, the evidence was more than sufficient to support the jury's conclusion
26 that Reyes knowingly and willfully made material misstatements.  Put another way, because
27 evidence of knowledge on the part of <u>other</u> Brocade officials would not undercut the
28 government's case as to Reyes' scienter, there is no reason to believe that the jury's verdict

6

would have been different had the SEC's allegations been introduced as evidence. As this Court explained in the order denying the motion for new trial, "notwithstanding the parties' emphasis on this subject, what the finance and accounting departments did or did not know about the scheme is certainly not determinative of Reyes' criminal liability."

What is more, the case upon which Reyes primarily relies, Jack Faucett, declined to apply the doctrine of collateral estoppel not just because newly discovered evidence could support a different verdict, but because the new "crucial" evidence was omitted by the trial judge, thereby undermining confidence in the conclusion that the party being estopped had a "full and fair" opportunity to litigate the earlier case. See 744 F.2d at 126. The court's decision turned on its conclusion that the party against whom estoppel was invoked was "deprived of crucial evidence" without fault of their own. Id. By contrast, Reyes had access to reams of government evidence that could have been used to support his position, but he failed to proffer such evidence to the jury. See Order Denying Motion for New Trial at 22-23 ("Here . . . the prosecutor disclosed all of the witness statements recorded by the FBI, and all of the witnesses were available for Reyes to summon. Of course, Reyes was under no obligation to call any witnesses at all. But having foregone the opportunity to rebut many of the inferences raised by the prosecution's case-in-chief, assuming he could have done so with these witnesses, the Court finds no reason to grant a new trial based on the prosecution's decision to argue those inferences.") (emphasis in original). That the evidence contained in the SEC's allegations was not presented to the jury rests, at least in some part, on Reyes' shoulders, and for that reason alone Jack Faucett is inapposite. In short, the criminal trial was not so "unfair" as to preclude application of collateral estoppel.

In his final argument, Reyes contends that even if collateral estoppel could be applied and summary judgment granted, the Court should postpone a ruling until after the appeal of Reyes' conviction is finalized in the interest of judicial economy. Reyes is correct that if his criminal appeal is successful, any judgment against him would be set aside. The Ninth Circuit has anticipated that possibility, and held that "the benefits of giving a judgment preclusive effect pending appeal outweigh any risks of a later reversal of that judgment."

Collins v. D.R. Horton, Inc., 505 F.3d 874, 883 (9th Cir. 2007).  Reyes had an opportunity to fully and fairly litigate his guilt, and the jury's verdict will not be stripped of its preclusive effect merely because of the possibility of reversal.

### III. Remedies & Discovery

For the reasons provided at the hearing, the Court denies without prejudice the SEC's request for remedies.

The parties have divergent opinions over the role that Reyes may play in future discovery proceedings now that summary judgment has been granted.  Because the Court cannot render an informed opinion on Reyes' discovery rights in a vacuum, the SEC is ordered to move for a protective order in the event that it believes Reyes is seeking inappropriate access to discovery materials or proceedings.

**IT IS SO ORDERED.**



Dated: August 25, 2008          CHARLES R. BREYER
                                UNITED STATES DISTRICT JUDGE

G:\CRBALL\2006\4435\SJ Order.wpd          8